# SUPPLEMENTAL APPENDIX

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| LA GLORIA OIL AND GAS COMPANY | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 02-465C |
| | ) | (Judge Hewitt) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DECLARATION OF JOHN R. WALKER

1. My name is John R. Walker and I am a contracting officer with the Defense Energy Support Center (DESC). I have been with DESC since 1983, except for a period from 1987-1989, when I worked for the Naval Sea Systems Command. I have been a DESC contracting officer since 1989.

2. DESC or its predecessor, the Defense Fuel Supply Center (DFSC), awarded La Gloria Oil and Gas Company (La Gloria) a series of 6 contracts between 1993 and 1999 that are the subject of economic price adjustment (EPA) clause claims.

3. These contracts were awarded in DESC's domestic bulk fuels program, were indefinite quantity-type contracts for one year, and called for the delivery of large volumes of fuel.

4. Many of the solicitations for the domestic bulk fuels contracts provided that a portion of the requirement was set aside for participation by small business concerns. A copy of a sample of the DESC clause implementing the partial small business set aside, I237.07, is included in Defendant's supplemental appendix at 4. Prior to 1988, similar clauses were included in DESC's solicitations. Beginning in 1988, DESC solicitations included an evaluation

preference of up to 10 percent for small disadvantaged business concerns, a copy of DESC clause I237.05, which implemented this preference, is included in Def. Supp. App. at 5. Beginning in 1988 the solicitations also included DESC clause I237.06, which provided that a portion of the requirement was set aside for exclusive participation by small business concerns with preferential consideration for small disadvantaged business concerns. A copy of that clause is at Def. Supp. App. 6.

5. DESC's partial set aside clauses operated in substantially the same manner as the standard FAR and DFARS clauses for partial small business set asides. After offers were received under the solicitations they would be evaluated as if there were no set aside quantity. The set aside quantities would then be offered to small businesses based upon prices that DESC would otherwise pay under the solicitation had there been no set aside for supply of the location at which the set aside was placed, adjusted for transportation charges. In awarding the set aside quantities, the contracting officer would not furnish either the identity, or the amount of the offered price that DESC would otherwise pay.

6. The difference between the standard FAR and DFARS clauses and set aside procedures and the set aside clauses and procedures used in DESC domestic bulk acquisitions was that set aside quantities were offered to small businesses and small disadvantaged businesses before award of the basic quantities. If no small or small disadvantaged business offeror was willing to accept the set aside quantities at the offered price, *i.e.*, there was a set aside "failure," the set aside quantities would be added back to the basic quantities and awarded to the low offeror. The standard FAR and DFARS procedures provide that set aside quantities are offered after the basic quantities are awarded. Under the standard FAR and DFARS procedure, if there is a set aside failure, the quantities are not awarded under the basic acquisition, but are re-

solicited under a new acquisition. The delay that would result from re-solicitation could adversely affect the mission and readiness posture of military units dependent upon those requirements. As the clauses at Supp. App. 4-7 show, DESC has, for decades, had a FAR deviation authorizing the use of its clauses and procedures.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on 3-29-06.

JOHN R. WALKER
Contracting Officer

The following clause applies only to other than DoD set-aside items.

1237.07 NOTICE OF PARTIAL SMALL BUSINESS SET-ASIDE (DFSC AUG 1984) (DEVIATION)

(a) Any offer imposing a minimum of the quantity which may be awarded, which is in excess of the non-set-aside quantity of the item or items involved, will not be considered.

(b) General Information.

(1) A portion of certain items of this procurement, as listed in the Schedule, has been set- aside for award to eligible small business concerns. The quantities indicated for such items in the Schedule include the set-aside portion. All offerors are urged to offer the maximum quantities they desire and are capable of delivering. A small business concern interested in receiving a set-aside contract should submit an offer in the same manner as though there were no set-aside. To be considered for the set-aside portion of this procurement, an offeror qualifying as a small business concern must offer on the non-set-aside and set-aside portions of the procurement. Separate offers should not be submitted on the non-set-aside and set-aside portions.

(2) The successful contractors for the set-aside portion will be determined in accordance with the procedures set forth below. The partial small business set-aside of the procurement is based on a determination by the Contracting Officer that it is in the interest of maintaining or mobilizing the nation's full production capacity, or in the interest of national defense programs, or in the interest of assuring that a fair portion of Government procurement is placed with small business concerns.

(3) The offeror must recognize that if it accepts a set-aside contract, its obligation is to furnish product which conforms with all small business requirements set forth herein.

(c) Award Procedure.

(1) All of the offers received under this solicitation will first be negotiated as to price and an evaluation will be made as though there were no set-aside. The price for the set-aside portion of this procurement will be negotiated by the Contracting Officer based upon prices the Government would otherwise pay under this solicitation had there been no set-aside for supply of the location at which the set-aside is placed, adjusted for transportation charges and other factors. Awards to small business concerns whose offers are determined by this evaluation to be low for the set-aside portion of an item will be made as to such portion without further negotiation. Contracts for the remaining set-aside portions will be negotiated with those eligible small business concerns who have submitted a responsive offer on the various items for which a set-aside has been indicated.

(2) Negotiations for set-aside awards will commence with the small business concern that has submitted the lowest offer of product on the non-set-aside portion and that has remaining a quantity of product after the award pattern has been established for the set-aside portion. If the low small business concern on the item does not accept the set-aside quantity, the next low small business concern on the item will be given the same opportunity, continuing with the next low small business concern until all small business concerns have been contacted.

(3) For the purpose of negotiation, when an offer contains increments at different prices, each increment will be considered a separate offer. Negotiation will be limited to the quantity offered (except as provided in (4) below) and which is not acceptable under the provision of (1) above.

(4) After set-aside negotiations have been concluded, a final evaluation will be accomplished. All businesses, without regard to the size of the company, will be afforded an opportunity to compete for non-set- aside quantities. The Government reserves the right to make awards to the otherwise low offeror for all or any portion of the set-aside quantities, without regard to the size of the company, if eligible small business concerns do not offer a quantity of product sufficient to meet a set-aside or do not accept set-aside offers. The total quantity which will be awarded a small business concern on both the unreserved and reserved portions will not exceed the total quantity offered under this solicitation by such small business offer. However, if insufficient product is offered by small businesses to meet the quantity setaside for small business, the small business concerns with which negotiations have commenced may be given an opportunity to offer additional product.

(DFSC 52.219-9F07)

1251(F) ANTI-KICKBACK PROCEDURES (OCT 1988)

(a) *Definitions.*

"Kickback," as used in this clause, means any money, fee, commission, credit, gift, gratuity, thing of value, or compensation of any kind which is provided, directly or indirectly, to any prime Contractor, prime Contractor employee, subcontractor, or subcontractor employee for the purpose of improperly obtaining or rewarding favorable treatment in connection with a prime contract or in connection with a subcontract relating to a prime contract.

"Person," as used in this clause, means a corporation, partnership, business association of any kind, trust, joint-stock company, or individual.

"Prime Contract," as used in this clause, means a contract or contractual action entered into by the United States for the purpose of obtaining supplies, materials, equipment, or services of any kind.

"Prime Contractor," as used in this clause, means a person who has entered into a prime contract with the United States.

"Prime Contractor Employee," as used in this clause, means any officer, partner, employee, or agent of a prime Contractor.

"Subcontract," as used in this clause, means a contract or contractual action entered into by a prime Contractor or subcontractor for the purpose of obtaining supplies, materials, equipment, or services of any kind under a prime contract.

I211.200 ORDERING (APR 1984)

(a) Any supplies and services to be furnished under this contract shall be ordered by issuance of delivery orders by the individuals or activities designated in the Schedule. Such orders may be issued from Date of Award through 30 September 1996.

(b) All delivery orders are subject to the terms and conditions of this contract. In the event of conflict between a delivery order and this contract, the contract shall control.

(c) If mailed, a delivery order is considered "issued" when the Government deposits the order in the mail. *Orders may be issued orally or by written telecommunications only if authorized in the Schedule.*

(FAR 52.216-18)

I211.02 ORDERING (CONT'D) (DFSC JAN 1991)

(d) For product funded and paid for by the Defense Logistics Agency, the Contractor will be furnished with a document entitled "Source Identification and Ordering Authorization." This document is for planning purposes only and does not constitute an order under the contract. This document will also indicate the activity(ies) authorized to place orders under this contract. This document does not in any manner modify or limit Contractor's obligation to deliver pursuant to properly placed orders as provided in the contract.

(DFSC 52.216-9F12)

I225 PAYMENTS (APR 1984)

The Government shall pay the Contractor, upon the submission of proper invoices or vouchers, the prices stipulated in this contract for supplies delivered and accepted or services rendered and accepted, less any deductions provided in this contract. Unless otherwise specified in this contract, payment shall be made on partial deliveries accepted by the Government if--

(a) The amount due on the deliveries warrants it; or

*(b) The Contractor requests it and the amount due on the deliveries is at least $1,000 or 50 percent of the* total contract price. (FAR 52.232-1)

I229 RESTRICTIONS ON SUBCONTRACTOR SALES TO THE GOVERNMENT (JUL 1985)

(a) Except as provided in (b) below, the Contractor shall not enter into any agreement with an actual or prospective subcontractor, nor otherwise act in any manner, which has or may have the effect of restricting sales by such subcontractors directly to the Government of any item or process (including computer software) made or furnished by the subcontractor under this contract or under any follow-on production contract.

(b) The prohibition in (a) above does not preclude the Contractor from asserting rights that are otherwise authorized by law or regulation.

(c) The Contractor agrees to incorporate the substance of this clause, including this paragraph (c), in all subcontracts under this contract. (FAR 52.203-6)

If this document contains partial small business set-aside items in the Schedule, the evaluation preference described in the following clause is not applicable to the non-set-aside portion of those items, or to the unreserved portion of items partially reserved for contracting with the SBA under the 8(a) program.

I237.05 NOTICE OF EVALUATION PREFERENCE FOR SMALL DISADVANTAGED BUSINESS CONCERNS (DFSC AUG 1994) (DEVIATION)

(a) DEFINITIONS. The term "small disadvantaged business (SDB) concern," as used in this clause, has the meaning set forth in the REPRESENTATIONS clause of this contract. SDB concerns must supply petroleum product from an SDB manufacturer, who complies with *the petroleum products size standards at 13 CFR 121, to be eligible for the evaluation* preference.

(b) EVALUATION PREFERENCE.

(1) After all other evaluation factors described in this solicitation are applied, offers will be evaluated by adding a factor of 10 percent to the price of all offers, except--

*(i) Offers from SDB concerns that have not waived the preference;*

(ii) Otherwise successful offers of eligible products under the Trade Agreements Act when the dollar threshold for application of the Act is exceeded.

(2) The 10 percent factor will be applied on a line item by line item basis or to any group of items on which award may be made. Other evaluation factors described in the solicitation will be applied before application of the 10 percent factor. However, in no event may award be made to an SDB concern at a price that exceeds fair market price (as determined under FAR 19.806-2) by more than 10 percent.

(c) WAIVER OF EVALUATION PREFERENCE.

An SDB may elect to waive the preference, in which case the 10 percent factor will be added to its offer for evaluation purposes.

[ ] Offeror elects to waive the preference in paragraph (b) above.

(DFSC 52.219-9F05)

The following clause applies to set-aside items.

1237.06 NOTICE OF PARTIAL SMALL BUSINESS SET-ASIDE WITH PREFERENTIAL CONSIDERATION FOR SMALL DISADVANTAGED BUSINESS CONCERNS (DFSC AUG 1994) (DEVIATION)

(a) DEFINITIONS.

"Small business concern," as used in this clause, means a concern, including its affiliates, that is independently owned and operated, not dominant in the field of operation in which it is bidding on Government contracts, and qualified as a small business under the size standards in this solicitation.

"Small disadvantaged business (SDB) concern," as used in this clause, means a small business concern, owned and controlled by individuals who are both socially and economically disadvantaged, as defined by the Small Business Administration at 13 CFR Part 124, the majority of earnings of which directly accrue to such individuals. This term also *means a small business concern owned and controlled by an economically disadvantaged Indian tribe or Native Hawaiian* organization which meets the requirements of 13 CFR 124.112 or 13 CFR 124.113, respectively. In order to be eligible for preferential consideration set forth in paragraph (c) below, SDB concerns must supply product from an SDB manufacturer.

(b) GENERAL.

(1) A portion of certain items of this procurement, as listed in the Schedule, has been set aside for *award to eligible small businesses, with preferential consideration for SDB concerns. The quantities indicated for such items* in the Schedule include the set-aside portion. All offerors are urged to offer the maximum quantities they desire and are capable of delivering. Small business and SDB concerns interested in receiving a set-aside contract should submit an offer in the same manner as though there were no set-aside. Volumes offered by qualified small businesses or SDB concerns will be ~~evaluated for the non-set-aside and set-aside portions of the procurement. Separate offers should not be submitted on the non-set-aside and set-aside portions.~~

(2) The partial small business set-aside of the procurement is based on a determination by the Contracting Officer that it is in the interest of maintaining or mobilizing the nation's full production capacity or in the interest of national defense programs, or in the interest of assuring that a fair portion of Government procurement is placed with small business concerns.

(3) All of the offers received under this solicitation will first be negotiated as to price and an evaluation will be made as though there were no set-aside.

(4) For the purposes of set-aside evaluation, when an offer contains increments at different prices, each increment will be considered a separate offer. Except as provided in paragraph (e) below, negotiations will be limited to the offered quantities not awarded under the provision of subparagraph (d)(2).

(c) SET-ASIDE AWARD PROCEDURE (Preferential Consideration for SDB Concerns).

(1) Offers from SDB and small business concerns will be evaluated with preferential consideration, as described below, given to eligible SDB concerns.

(2) Offers from SDB concerns will be reviewed first to determine if an award can be made to an SDB concern at its offered price, beginning with the SDB concern offering the lowest evaluated price for that item. Awards to SDB concerns on the set-aside portion of this procurement will be made at the price offered by the SDB concern if that evaluated *price does not exceed the highest award price on the non-set-aside portion by more than 10 percent, as adjusted for* transportation charges and other factors. If the SDB price exceeds the highest non-set-aside price by more than 10 percent, the SDB offer will be treated as a small business and the procedures set forth in (d) below will apply.

I237.06 (Cont'd)

(3) Any volumes remaining on the set-aside portion that are not awarded to the lowest priced eligible SDB concern under subparagraph (c)(2) will be awarded to any other SDBs eligible for award under the procedures set forth above, beginning with the SDB concern offering the next lowest price.

(d) SET-ASIDE AWARD PROCEDURE (Small Business Concerns).

(1) After evaluation and award to eligible SDB concerns, if any, negotiations will be conducted with small business concerns for any set-aside volumes not awarded to eligible SDB concerns under paragraph (c).

(2) The price for the small business set-aside portion will be negotiated by the Contracting Officer based upon prices the Government would otherwise pay under this solicitation had there been no set-aside for supply of the location at which the set-aside is placed, adjusted for transportation charges and other factors. For the set-aside portion of an item not already awarded to SDB concerns, awards will be made to the small business concern whose offer is determined by this evaluation to be low without further negotiation. Contracts for the remaining set-aside portions will be negotiated with those eligible small business concerns who have submitted a responsive offer on the various items for which a set-aside has been established.

(3) Negotiations for small business set-aside awards will begin with the small business concern with the lowest evaluated price and a quantity of offered product remaining. If the low small business concern on the item does not offer to supply product at the set-aside price, the next low small business concern on the item will be given the same opportunity and continuing with the next low small business concern until all small business concerns have been contacted.

~~(e) After set-aside negotiations have been concluded, a final evaluation will be accomplished. All eligible offerors, without regard to the size of the company, will be afforded an opportunity to compete for more set-aside quantities.~~ The Government reserves the right to make awards to the otherwise low offeror for all or any portion of the set-aside quantities, without regard to the size of the company, if eligible SDB or small business concerns do not offer a quantity of product sufficient to meet a set-aside requirement or do not offer to supply at the set-aside prices. The total quantity which will be awarded a small business or an SDB offeror on both the unreserved and reserved portions will not exceed the total quantity offered under this solicitation by such small business or SDB offerors. However, if insufficient product is offered by small business and SDB concerns to meet the quantity set-aside for small business, SDB and small business concerns with whom the Government has already commenced negotiations may be given an opportunity to offer additional product.

(f) Where the Trade Agreements Act applies to the non-set-aside portion, offers of eligible products will be treated as if they were qualifying country end products.

(g) TOKEN OFFERS.

The Government reserves the right to not consider token offers or offers designed to secure an unfair advantage over other offerors eligible for the set-aside portion.

(DFSC 52.219-9F06)

I251(F) ANTI-KICKBACK PROCEDURES (OCT 1988)

(a) Definitions.

"Kickback," as used in this clause, means any money, fee, commission, credit, gift, gratuity, thing of value, or compensation of any kind which is provided, directly or indirectly, to any prime Contractor, prime Contractor employee, subcontractor, or subcontractor employee for the purpose of improperly obtaining or rewarding favorable treatment in connection with a prime contract or in connection with a subcontract relating to a prime contract.

"Person," as used in this clause, means a corporation, partnership, business association of any kind, trust, joint-stock company, or individual.

"Prime Contract," as used in this clause, means a contract or contractual action entered into by the United States for the purpose of obtaining supplies, materials, equipment, or services of any kind.

"Prime Contractor," as used in this clause, means a person who has entered into a prime contract with the United States.

"Prime Contractor Employee," as used in this clause, means any officer, partner, employee, or agent of a prime Contractor.

"Subcontract," as used in this clause, means a contract or contractual action entered into by a prime Contractor or subcontractor for the purpose of obtaining supplies, materials, equipment, or services of any kind under a prime contract.

"Subcontractor," as used in this clause, (1) means any person, other than the prime Contractor, who offers to furnish or furnishes any supplies, materials, equipment, or services of any kind under a prime contract or a subcontract entered into in connection with such prime contract; and (2) includes any person who offers to furnish or furnishes general supplies to the prime Contractor or a higher tier subcontractor.

"Subcontractor Employee," as used in this clause, means any officer, partner, employee, or agent of a subcontractor.

(b) The Anti-Kickback Act of 1986 (41 U.S.C. 51-58) (the Act) prohibits any person from--

(1) Providing or attempting to provide or offering to provide any kickback;

(2) Soliciting, accepting, or attempting to accept any kickback; or

(3) Including, directly or indirectly, the amount of any kickback in the contract price charged by a prime Contractor to the United States or in the contract price charged by a subcontractor to a prime Contractor or higher tier subcontractor.

## 15.610 Written or oral discussion.

(a) The requirement in paragraph (b) of this section for written or oral discussion need not be applied in acquisitions--

(1) In which prices are fixed by law or regulation;

(2) Of the set-aside portion of a partial set-aside; or

(3) In which the solicitation notified all offerors that the Government intends to evaluate proposals and make award without discussion, unless the contracting officer determines that discussions (other than communications conducted for the purpose of minor clarification) are considered necessary (see 15.407 (d)(4)). Once the Government states its intent to award without discussion, the rationale for reversal of this decision shall be documented in the contract file.

(b) Except as provided in paragraph (a) of this section, the contracting officer shall conduct written or oral discussions with all responsible offerors who submit proposals within the competitive range. The content and extent of the discussions is a matter of the contracting officer's judgment, based on the particular facts of each acquisition (but see paragraphs (c) and (d) of this section).

(c) The contracting officer shall--

(1) Control all discussions;

(2) Advise the offeror of deficiencies in its proposal so that the offeror is given an opportunity to satisfy the Government's requirements;

(3) Attempt to resolve any uncertainties concerning the technical proposal and other terms and conditions of the proposal;

(4) Resolve any suspected mistakes by calling them to the offeror's attention as specifically as possible without disclosing information concerning other offerors' proposals or the evaluation process (see 15.607 and Part 24);

(5) Provide the offeror a reasonable opportunity to submit any cost or price, technical, or other revisions to its proposal that may result from the discussions; and

(6) Provide the offeror an opportunity to discuss past performance information obtained from references on which the offeror had not had a previous opportunity to comment. Names of individuals providing reference information about an offeror's past performance shall not be disclosed.

(d) The contracting officer and other Government personnel involved shall not engage in technical leveling (i.e., helping an offeror to bring its proposal up to the level of other proposals through successive rounds of discussion, such as by pointing out weaknesses resulting from the offeror's lack of diligence, competence, or inventiveness in preparing the proposal).

(e) The following conduct may constitute prohibited conduct under section 27 of the Office of Federal Procurement Policy Act, as amended (41 U.S.C. 423), and Subpart 3.104 to which civil and criminal penalties and administrative remedies apply.

(1) Technical transfusion (i.e., Government disclosure of technical information pertaining to a proposal

that results in improvement of a competing proposal); or

(2) Auction techniques, such as--

(i) Indicating to an offeror a cost or price that it must meet to obtain further consideration;

(ii) Advising an offeror of its price standing relative to another offeror (however, it is permissible to inform an offeror that its cost or price is considered by the Government to be too high or unrealistic); and

(iii) Otherwise furnishing information about other offerors' prices.

**52.219-7 Notice of Partial Small Business Set-Aside.**

As prescribed in 19.508(d), insert the following clause:

NOTICE OF PARTIAL SMALL BUSINESS SET-ASIDE (OCT 1995)

(a) *Definitions*.

"Small business concern", as used in this clause, means a concern, including its affiliates, that is independently owned and operated, not dominant in the field of operation in which it is bidding on Government contracts, and qualified as a small business under the size standards in this solicitation.

(b) *General*. (1) A portion of this requirement, identified elsewhere in this solicitation, has been set aside for award to one or more small business concerns.

(2) Offers on the non-set-aside portion will be evaluated first and award will be made on that portion in accordance with the provisions of this solicitation.

(3) The set-aside portion will be awarded at the highest unit price(s) in the contract(s) for the non-set-aside portion, adjusted to reflect transportation and other costs appropriate for the selected contractor(s).

(4) The contractor(s) for the set-aside portion will be selected from among the small business concerns that submitted responsive offers on the non-set-aside portion. Negotiations will be conducted with the concern that submitted the lowest responsive offer on the non-set-aside portion. If the negotiations are not successful or if only part of the set-aside portion is awarded to that concern, negotiations will be conducted with the concern that submitted the second-lowest responsive offer on the non-set-aside portion. This process will continue until a contract or contracts are awarded for the entire set-aside portion.

(5) The Government reserves the right to not consider token offers or offers designed to secure an unfair advantage over other offerors eligible for the set-aside

portion.

(c) *Agreement*. For the set-aside portion of the acquisition, a manufacturer or regular dealer submitting an offer in its own name agrees to furnish, in performing the contract, only end items manufactured or produced by small business concerns inside the United States, its territories and possessions, the Commonwealth of Puerto Rico, the Trust Territory of the Pacific Islands, or the District of Columbia. However, this requirement does not apply in connection with construction or service contracts.

(End of clause)

*Alternate I* (OCT 1995). When the acquisition is for a product in a class for which the Small Business Administration has determined that there are no small business manufacturers or processors in the Federal market in accordance with 19.502-2(c), delete paragraph (c).

**252.219-7006 Notice of Evaluation Preference for Small Disadvantaged Business Concerns.**
As prescribed in 219.7003, use the following clause:
**NOTICE OF EVALUATION PREFERENCE FOR SMALL DISADVANTAGED BUSINESS CONCERNS (JUN 1997)**

(a) **Definitions.**

"Historically black colleges and universities," as used in this clause, means institutions determined by the Secretary of Education to meet the requirements of 34 CFR Section 608.2. The term also means any nonprofit research institution that was an integral part of such a college or university before November 14, 1986.

"Minority institutions," as used in this clause, means institutions meeting the requirements of Section 1046(3) of the Higher Education Act of 1965 (20 U.S.C. 1135d-5(3)). The term also include Hispanic-serving institutions as defined in Section 316(b)(1) of such Act (20 U.S.C. 1059c(b)(1)).

"Small disadvantaged business concern," as used in this clause, means a small business concern, owned and controlled by individuals who are both socially and economically disadvantaged, as defined by the Small Business Administration at 13 CFR Part 124, the majority of earnings of whichdirectly accrue to such individuals. This term also means a small business concern owned and controlled by an economically disadvantaged Indian tribe or Native Hawaiian organization which meets the requirements of 13 CFR 124.112 or 13 CFR 124.113, respectively.

"United States," as used in this clause, means the United States, its territories and possessions, the Commonwealth of Puerto Rico, the U.S. Trust Territory of the Pacific Islands, or the District of Columbia.

(b) **Evaluation preference.**

(1) Offers will be evaluated by adding a factor of ten percent to the price of all offers, except --
(i) Offers from small disadvantaged business concerns, which have not waived the preference;
(ii) Offers from historically black colleges and universities or minority institutions, which have not waived the preference;
(iii) Otherwise successful offers of --

(A) Eligible products under the Trade Agreements Act when the dollar threshold for application of the Act is exceeded;

(B) Qualifying country end products (as defined in the Defense Federal Acquisition Regulation Supplement clause at 252.225-7001, Buy American Act and Balance of Payments Program); and

(iv) Offers where application of the factor would be inconsistent with a Memorandum of Understanding or other international agreement with a foreign government.
(2) The ten percent factor will be applied on a line item by line item basis or to any group of items on which award may be made. Other evaluation factors described in the solicitation will be applied before application of the ten percent factor. The ten percent factor will not be applied if using the preference would cause the contract award to be made at a price which exceeds the fair market price by more than ten percent.

(c) **Waiver of evaluation preference.**

A small disadvantaged business, historically black college or university, or minority institution offeror may elect to waive the preference, in which case the ten percent factor will be added to its offer for evaluation purposes. The agreements in paragraph (d) do not apply to offers which waive the preference.
_____ Offeror elects to waive the preference

(d) **Agreements.**

(1) A small disadvantaged business concern, historically black college or university, or minority institution offeror, which did not waive the preference, agrees that in performance of the contract, in the case of a contract for--
(i) Services, except construction, at least 50 percent of the cost of personnel for contract performance will be spent for employees of the concern.
(ii) Supplies, (other than procurement from a regular dealer in such supplies), at least 50 percent of the cost of manufacturing, excluding the cost of materials, will be performed by the concern.
(iii) General construction, at least 15 percent of the cost of the contract, excluding the cost of materials, will be performed by employees of the concern.
(iv) Construction by special trade contractors, at least 25 percent of the cost of the contract, excluding the cost of materials, will be performed by employees of the concern.

(2) A small disadvantaged business, historically black college or university, or minority institution regular dealer submitting an offer in its own name agrees to furnish in performing this contract only end items manufactured or produced in

the United States by small disadvantaged business concerns, historically black colleges or universities, or minority institutions.

(3) Upon request, a historically black college or university or minority institution offeror will provide the Contracting Officer evidence that it has been determined to be an HBCU or MI by the Secretary of Education.

(End of clause)

**252.219-7001 Notice of Partial Small Business Set-Aside with Preferential Consideration for Small Disadvantaged Business Concerns.**
As prescribed in 219.508(d), use the following clause:
**NOTICE OF PARTIAL SMALL BUSINESS SET-ASIDE WITH PREFERENTIAL CONSIDERATION FOR SMALL DISADVANTAGED BUSINESS CONCERNS (MAY 1995)**

(a) **Definitions.**

"Labor surplus area," as used in this clause, means a geographical area identified by the Department of Labor as an area of labor surplus.

"Labor surplus area concern," as used in this clause, means a concern that, together with its first tier subcontractors, will perform substantially in labor surplus areas.

"Perform substantially in labor surplus areas," as used in this clause, means that the costs incurred under the contract on account of manufacturing, production, and performance of services in labor surplus areas exceed 50 percent of the contract price.

"Small business concern," as used in this clause, means a concern, including its affiliates, that is independently owned and operated, not dominant in the field of operation in which it is bidding on Government contracts, and qualified as a small business under the size standards in this solicitation.

"Small disadvantaged business concern," as used in this clause, means a small business concern, owned and controlled by individuals who are both socially and economically disadvantaged, as defined by the Small Business Administration at 13 CFR Part 124, the majority of earnings of which directly accrue to such individuals. This term also means a small business concern owned and controlled by an economically disadvantaged Indian tribe or Native Hawaiian organization which meets the requirements of 13 CFR 124.112 or 13 CFR 124.113, respectively.

"United States," as used in this clause, means the United States, its territories and possessions, the Commonwealth of Puerto Rico, the U.S. Trust Territory of the Pacific Islands, or the District of Columbia.

(b) **General.**

A portion of this requirement, identified elsewhere in this solicitation, has been set-aside for award to one or more small business concerns. After offers for the non-set-aside portion have been evaluated, negotiations will be conducted for the set-aside portion.

(1) Offers on the non-set-aside portion will be evaluated and award made in accordance with the other provisions of this solicitation.
(2) The set-aside portion will be negotiated, in accordance with this clause, with small business concerns which submitted offers on the non-set-aside portion.

(c) **Award of the set-aside portion.**

(1) Small business offerors on the non-set-aside portion will be selected for negotiation of the set-aside portion based on their standing -- first in terms of group and then in terms of lowest responsive offer on the non-set-aside portion.
(i) Group 1 - Small disadvantaged business concerns which are also labor surplus area concerns.
(ii) Group 2 - Small business concerns which are also labor surplus area concerns.
(iii) Group 3 - Other small disadvantaged business concerns.
(iv) Group 4 - Other small business concerns.
(2) The set-aside portion will be awarded at the highest unit price(s) in the contract(s) for the non-set-aside portion, adjusted to reflect transportation and other costs appropriate for the selected contractor(s), except --
(i) Award of the set-aside portion to a small disadvantaged business concern will be at the lower of --
(A) The price offered by the concern on the non-set-aside portion; or

(B) A price that does not exceed the award price on the non-set-aside portion by more than ten percent.

(ii) When award under the set-aside portion is to a concern offering a nonqualifying country end product and the highest unit price in the contract(s) is for a domestic or qualifying country end product, the set-aside price will be the higher of--

(A) The highest award price for a nonqualifying country end product under the nonset-aside; or
(B) A price which, when adjusted by the Buy American Act evaluation factor, would equal the highest unit price in the contract(s).

(iii) When award under the set-aside portion is to a concern offering a domestic end product and the highest unit price in the contract(s) is for a nonqualifying country end product which was evaluated using the Buy American Act evaluation factor, the set-aside price will be awarded at the evaluated price of the non-qualifying country.
(iv) When award under the set-aside portion is to a concern offering a domestic end product and the highest unit price in the contract(s) is for a

nonqualifying country end product which was evaluated without the Buy American Act factor--

(A) And award was made to a domestic or qualifying country offer at a price lower than the high contract price, the set-aside price will be the highest unit price in the contract(s).
(B) And award was not made to a domestic or qualifying country offer at a price lower than the high contract price, the set-aside price will be the lower of--
(1) The highest unit price under the contract(s) as adjusted by the Buy American Act evaluation factor; or
(2) The lowest offered price for a domestic or qualifying country end product which was not awarded under the nonset-aside.

(v) Where the Trade Agreements Act applies to the nonset-aside portion, offers of eligibleproducts will be treated as if they were qualifying country end products.
(vi) Discount terms used in evaluation of the highest non-set-aside award price will apply to the set-aside award price.
(3) If negotiations are not successful for any part of the set-aside portion, the set-aside will be dissolved for that part and the requirement will be resolicited.

(d) **Token offers.**

The Government reserves the right to not consider token offers or offers designed to secure an unfair advantage over other offerors eligible for the set-aside portion.

(e) **Eligibility for preference as a labor surplus area concern.**

Small business or small disadvantaged business offerors which claim preference for the set-aside portion as a labor surplus area concern, must list the labor surplus area location(s) of offeror or first tier subcontractors, which account for more than 50 percent of the contract price.

Name of Company:
Street Address:
City/County:
State:

(f) **Agreements.**

(1) If awarded a contract as a small disadvantaged business-labor surplus area concern or as a small business-labor surplus area concern, the offeror --

(i) Will perform the contract, or cause it to be performed, substantially in areas classified as labor surplus areas.
(ii) If the contract is in excess of $25,000, will submit a report to the Contracting Officer within 30 days after award that contains the following information--

(A) The dollar amount of the contract.
(B) Identification of each labor surplus area in which contract and subcontract performance is taking or will take place.
(C) The total costs incurred and to be incurred under the contract in each of the labor surplus areas by the contractor and first tier subcontractors.
(D) The total dollar amount attributable to performance in labor surplus areas.

(2) A manufacturer or regular dealer, which claims preference as a small disadvantaged business and submits an offer in its own name, agrees to furnish in performing this contract only end items manufactured or produced by small disadvantaged business concerns in the United States except, as provided in Section 8051 of Pub. L. 103-139,and Section 8012 of Pub. L. 103-335, for contracts awarded during fiscal year 1994,and 1995, a small disadvantaged business manufacturer or regular dealer owned by an Indian tribe, including an Alaska Native Corporation, agrees to furnish only end items manufactured or produced by small business concerns in the United States.

(End of clause)

DFSC-N (A. Harvey/46570/fk) 6 January 1986

SUBJECT: Recommendation to Change Base Reference Date for EPA References Tied to Petroleum Marketing Monthly (PMM)

TO: DFSC-PD

1. The current procedure of adjusting prices on the domestic bulk program has a major drawback. As currently worded, clause B19.33, Part A, (f) states:

> The term "base reference price" means the reference price that will be established when the Petroleum Marketing Monthly publication becomes available for the month prior to the month in which Best and Final offers are due. For example, if Best and Final offers are due in April, the base reference price would be based on the March data of the Petroleum Marketing Monthly's specified Sales Prices of Petroleum Products Tables which would generally be published in mid-June.

2. Since the Best and Final offers are submitted before the base reference is known, offerors must guess at the relationship between their offered price and the reference. In order to compensate for this unknown factor offerors must implicitly increase their price. Whether offerors would admit to this is an interesting question in light of the initial sentence in B19.33:

> The contractor represents that the unit prices set forth in this contract do not include any contingency allowance to cover the possibility of increases in the reference price(s) in the Contractor's bid or proposal.

3. Yet our analysis of the movement of the PMM as compared to other references as used for interim price adjustments indicates that the PMM may have moves as much as one or two cents per gallon out of step with such interim references. This situation is not only difficult for offerors, it provides potentially misleading indications for DFSC.

4. It is the recommendation of this office that the base reference date used on domestic bulk solicitations be changed so that offerors will know exactly the base reference price to which their best and final price is tied. Thus, the best and final offer price would be tied to a known final EPA reference and a known interim EPA reference. For example, if the best and final date were

DFSC-PD Page 2 6 January 1986
SUBJECT: Recommendation to Change Base Reference Date for EPA References
Tied to Petroleum Marketing Monthly (PMM)

November 15th, the final base EPA reference would be PMM for August and the interim base reference would be the publications(s) as stated in B19.33 Part C for the month of July.

CHRISTOPHER LEE
Director
Office of Market
Research & Analysis

DEFENSE LOGISTICS AGENCY

# Inter-Office Memorandum

IN REPLY REFER TO DFSC-N (L.Ervin/46570/me)

2 December 1987

SUBJECT: Economic Price Adjustment in the Domestic Bulk Program

TO: DFSC-D/DD

1. At the recent prenegotiation briefing for the current East/Gulf domestic bulk procurement, discussion among DFSC-D, -P, and -N concerned the means of price escalation used in the domestic programs. DFSC-N offered to provide DFSC-D with a copy of the decision package on this issue which was prepared last spring for General Griffith. The enclosed material includes the decision paper and related back-up material.

2. The decision problem concerns the use of an administratively cumbersome method of price adjustment which results in contractor complaints and problems in billing and payments by DFSC. The paper discussed four options, including keeping the then current interior/final adjustment system, modifying it to reduce offer price uncertainties, or moving to final-only escalators based on prices published in trade journals. The interested directorates, DFSC-C, -G, -N, and -P, unanimously recommended Option II, a modification of the then current system. General Griffith accepted Option II for use beginning with last summer's Inland/West procurement. At that time, he stated his desire that DFSC move eventually to trade journal-based escalation and asked that the interested directorates work together toward that end.

3. The original decison package included the decision paper and the back-up material at Tabs A through C. The research paper at Tab D was produced prior to the meeting with General Griffith and was discussed at that meeting.

Christopher Lee

CHRISTOPHER LEE
Director
Office of Market Research
and Analysis

cc: DFSC-C
DFSC-G
DFSC-P/PZ

DLA FORM 111 JUL 82 PREVIOUS EDITION MAY BE USED UNTIL EXHAUSTED

U.S. G.P.O. 1986-491-133/52541