Westlaw.

1988 WL 227932 (Comp.Gen.), B- 230,556

(Cite as: 1988 WL 227932 (Comp.Gen.))

COMPTROLLER GENERAL

*1 Subject: Defense Fuel Supply Center's Small Business Set-Aside Procurements (B-230556; Code 396917)
September 6, 1988

To: Group Director, NSIAD--John Rinko
Thru: Senior Attorney, OGC--A.R. Kasdan

DIGEST

The Defense Fuel Supply Center's (DFSC) small business partial set-aside procedures for the acquisition of its fuel supplies, comply and are consistent with the Small Business Act, 15 U.S.C. 631 et.seq., as well as other applicable Federal procurement laws and regulations. The DFSC procedures have been approved as deviations from applicable procurement regulations for over 20 years, and we previously considered these procedures as a reasonable exercise of DFSC's discretion. See B-168576(2), April 28, 1971 and B-171289, April 28, 1971.

This responds to your request for our views on the legality of the Defense Fuel Supply Center's (DFSC) small business set-aside practices (procedures) for the acquisition of its fuel supplies. In his letter of January 11, 1988, to GAO requesting this review, Senator Max Baucus questioned whether DFSC's small business set-aside procedures afford small business a fair opportunity to compete for these fuel acquisitions. He has asked GAO to determine whether DFSC's procurement procedures are consistent with the Small Business Act, as well as other applicable Federal procurement laws and regulations. For the reasons given below, we believe that DFSC's small business set-aside procurement procedures comply and are consistent with those laws and regulations.

Background

The DFSC purchases its bulk fuel supplies for the Department of Defense's (DOD) domestic requirements in a non-traditional way. It makes two major buys of bulk fuels with multiple contract awards based on a geographical division of the country: Inland/West and East/Gulf. It uses a bid evaluation model developed in the 1960's and 70's which allows it to select the particular combination of contract awards for a specific buy which will fulfill the government's requirement at the overall lowest cost (product plus transportation cost). Under this model, multiple awards are needed at many locations so that each individual requirement or location can be completely supplied. Usual procedures of awarding contracts to the lowest sources do not provide the least total cost pattern of awards.

DFSC solicitations request offers from all suppliers, including both large and small business firms, for needs of all DOD locations in the particular geographic

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

area. Using the model developed and taking into account quantities reserved for qualified minority small business firms and small business set-asides, prices for bulk fuels at the various locations in the region are established. DFSC must assure that the small business firms eligible for set-asides are offered an opportunity to receive contracts at a particular location at prices which are not higher than the maximum unit price DFSC would otherwise have to pay. It uses one of three methods--the balanced price, the step price and the matched price--depending on the pattern of bids received to determine the set-aside price. This price is then offered to small business and they have an opportunity to accept or reject it. If it is rejected, the amount set-aside is offered to other sellers at that location to avoid any resolicitation.

*2 Since 1960 DFSC procedures have been approved as a deviation or exception from procurement regulations applicable to small business partial set-asides. The most recent extension of this exception occurred in May 1987 when the DFSC procedures were approved as a deviation from the applicable provisions of the Federal Acquisition Regulation (FAR 19.507, and 19.508(d) ) and of the Defense Supplement to the FAR (DFAR 19.508(d) and 19.508(70) ). DFSC believes that these procedures are necessary to assure awards to small business concerns at prices that are fair and reasonable to the government and to the concerns. DFSC also argues that its procedure results in small business receiving an equal to or higher price for their fuel than they would have received if the standard FAR small business partial set-aside procedures were used. Under the FAR, the price for a partial set-aside is "... the highest unit price(s) in the contract(s) for the non-set-aside portion...." FAR 52.219.7

In his January 11 letter, Senator Baucus expressed concern that the DFSC's partial set-aside procedure may not be consistent with the spirit of the Small Business Set-Aside Program. He stated that in DFSC procurements small businesses do not engage in price competition with other small businesses. Since the "match price" for the fuel is largely set by the prices submitted by large fuel suppliers, small businesses are forced to compete with the cost of production of large suppliers. He therefore contends that DFSC's procedure does not offer small businesses the "maximum practical opportunity to participate in the performance of contracts let by any Federal agency," referring to the Small Business Act, 15 U.S.C. 637. [FN1]

Question: Does the DFSC small business partial set-aside procedure comply with the Small Business Act and other federal procurement laws and regulations?

Answer: Yes. Although the DFSC small business set-aside procedure is an approved deviation from FAR and DFAR provisions, it reserves for small business a portion of a particular acquisition as long as the price does not exceed the market price. The deviation from FAR and DFAR set aside procedures is required because of the nature of DFSC's acquisition of bulk fuel supplies. No provision of the Small Business Act or the FAR or DFAR require that small business compete only against each other in setting the price for the small business set-asides. GAO has previously found substantially similar DFSC procedures to be reasonable.

Explanation: The Small Business Act, 15 U.S.C. 631 et. seq., is designed to

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

protect the economic interests of small business concerns, and "... to insure that a fair proportion of the total purchases and contracts or subcontracts for property and services for the government be placed with small business enterprises ..." 15 U.S.C. 631(a). (Emphasis added.) Identical policy objectives are stated in the Armed Services Procurement Act (ASPA), 10 U.S.C. 2301(b), and the Federal Property and Administrative Services Act (FPASA), 41 U.S.C. 252(b), which respectively govern military and civilian acquisitions. Part 19 of the FAR implements the small business acquisition-related provisions of the Small Business Act and the applicable provisions of the ASPA and FPASA. Also, provisions of the DFAR apply to small business set-aside in DOD acquisitions.

*3 To achieve the Small Business Act's "fair proportion policy", both the Act and the FAR give federal agencies broad authority to award contracts to small business, including on a total or partial set-aside basis. 15 U.S.C. 644(a) and FAR 19.5. An agency may not award a contract to a small business firm if the agency's cost would exceed a fair market price, 15 U.S.C. 644(a). [FN2] Relatedly, the FAR set-aside procedures provide that in both total and partial procurement set-asides, the contracts awarded must be made only at reasonable prices. FAR 19.502-2 and 19.502-3. The FAR also requires that specific clauses be inserted for set-aside contracts, i.e., FAR 52.219-6 (total set-asides) and 52.219-7 (partial set-asides). [FN3]

For partial set-asides, FAR 19.502(3)(c) requires that the contracting officer must first award the non-set-aside portion using normal contracting procedures. Both large firms and businesses eligible for the set-aside submit offers on the non-set-aside portion. After the non-set-aside portion is awarded, the contracting officer negotiates with small business firms who have submitted responsive (acceptable) offers on the non-set-aside portion. The set aside portion will be awarded at the highest unit price(s) in the non-set-aside portion. FAR 52.219-7, part (b)(3) of the required contract clause. If a set-aside acquisition is not awarded, the supplies or services for which no award was made is recompeted. FAR 19.507(a).

The DFSC procedures differ from the FAR procedures in two substantial respects which are said by DFSC to be required to effectuate bulk fuel acquisitions. First, the award of set-aside quantities is made at prices which would have been paid without the set-aside. This can differ from the "highest unit price(s)" paid under the FAR. This variance is the result of the nature of the petroleum refining business. In most businesses, prices will often drop as more product is produced. In the petroleum refinery business, the contrary is the case. Since the refining process can produce many products, e.g., jet fuel, gasoline, diesel fuel, etc., increased quantities of one product are produced at the expense of others and the price of additional production rises.

The second difference is that in the event of set-aside failures, the set-aside portion is not recompeted. Under the DFSC procedures both large and small firms are required to submit offers on total quantities just as if there was no set-aside. In this way, in the event a set-aside acquisition cannot be filled, other offers can be considered.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Under both the FAR partial set-aside regulation and the DFSC deviation large and small business compete against each other. Under the former, the large and small firms submit offers on the non-set-aside portion which is awarded first. The set-aside portion is negotiated with qualified small business who have submitted responsive offers under the non-aside portion. Under the DFSC procedure, both large and small firms compete by submitting offers on total quantities.

*4 We have found no court cases or GAO decisions or opinions which have specifically addressed the issue whether the FAR partial set-aside procedures are a reasonable implementation of the requirements of the Small Business Act. However, GAO has considered DFSC procedures substantially similar to those in effect today as a reasonable exercise of an agency's discretion. In B-168576(2), April 28, 1971, a small business protested the reduction of the small business set-aside and proposed certain changes in DFSC's set-aside procedures. At that time, DFSC's procedures were a deviation from applicable ASPA regulations. The protestor proposed that the formula DFSC uses to calculate the prices paid for the quantities accepted be modified. Under this proposal, the price for the set-aside would be set on the basis of the prices and quantities remaining on each offeror's bid after subtracting the amount awarded on the non-set-aside portion.

DFSC pointed out that the proposed procedure would not only cost the government more money, but might actually result in lower prices for set-asides as the percentage of the total procurement which is set-aside increases. GAO stated that it would not substitute its judgment for that of DFSC "unless it [DFSC] has acted in an arbitrary or capricious manner." We concluded that based on the record, there was "substantial evidence to support DFSC decision not to revise its small business set-aside procedures," as suggested by the protestor. In B-171289 , also decided on April 28, 1971, GAO concluded that it failed to see how evaluation procedures--substantially similar to DFSC present procedures--would be contrary to the "congressional purpose and intent in establishing the small business set-aside procedure, 15 U.S.C. 631."

In conclusion, we find no reason to question our previous positions that DFSC procedures are in compliance with the Small Business Act and are a reasonable exercise of agency discretion to implement the policy of the act.

Substantially similar DFSC procedures have been approved as deviations from applicable procurement regulations for partial set-asides for over 20 years. Our view is reenforced by information DFSC has provided that shows that the DFSC set-aside procedure results in small businesses receiving an equal to or a higher price for their fuel than under the FAR set-aside procedure.

Finally, we note that Senator Baucus letter referenced the Small Business Act's requirement that small businesses "... shall have the maximum practical opportunity to participate in the performance of contracts let by any federal agency ..." 15 U.S.C. 637(a). However, this section is not applicable to the award of a federal contract, but to insure that small business receive subcontracts under prime contracts the government has already awarded.

Raymond J. Wyrsch

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

1988 WL 227932 (Comp.Gen.), B- 230,556

(Cite as: 1988 WL 227932 (Comp.Gen.))

Senior Attorney, OCG

FN1 Senator Baucus' request stemmed from a specific DFSC fuel acquisition in which one small business firm, the Wolf Point Refining Company, could not meet the offered "match price" for the delivery of JP-4 fuel to the Minot Air Force Base, because to do so would have resulted in a $900,000 loss to the company. The attorney representing the company believes that DFSC's small business set-aside procedure offers little opportunity for small businesses to compete against large firms. In view of the Senator's request for a general assessment of DFSC's procedure, and that Wolf Point did not file a bid protest concerning the Minot fuel acquisition, we will not address this case.

FN2 The Small Business Act also requires that the head of each agency shall establish goals for the participation by small business concerns in the award of its procurement contracts having a value of $25,000 or more, 15 U.S.C. 644(g).

FN3 The DFAR also requires that similar clauses be inserted in DOD contracts, i.e., DFAR 52.219-7003.

1988 WL 227932 (Comp.Gen.), B- 230,556

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

platts

# About Platts

**About Platts**
Platts is the world leader in providing energy information. For nearly a century, Platts has helped to enable ever-changing global energy markets enhance their performance through such offerings as independent industry news and price benchmarks. From 15 offices worldwide, Platts covers the oil, natural gas, electricity, nuclear power, coal, petrochemical and metals markets.

**About The McGraw-Hill Companies**
Founded in 1888, The McGraw-Hill Companies is a leading global information services provider meeting worldwide needs in the financial services, education and business information markets through leading brands such as Standard & Poor's, McGraw-Hill Education, BusinessWeek and J.D. Power and Associates. The Corporation has more than 290 offices in 38 countries. Sales in 2005 were $6.0 billion. Additional information is available at http://www.mcgraw-hill.com.

Copyright © 2006 - Platts, All Rights Reserved
The McGraw-Hill Companies

platts

# Oilgram Price Report

Platts **Oilgram Price Report** is a daily report that covers market changes, market fundamentals and factors driving prices. Platts Oilgram Price Report also brings a vast array of Platts international prices for crude and products, netback tables, and market critical data.

Platts **Oilgram Price Report** helps you by delivering—

- **Monthly price supplements, product price assessments, crude oil price assessments**—See offers, bids, and transactions.
- **Monthly world crude table and weekly feeder crude table**—Keep up with the major traded crudes.
- **Spot tanker rates**—Get freight rate assessments from around the world.
- **Crude oil postings, rack prices, five-day rolling averages**—Make your supply planning more cost-effective.
- **Market commentary, Platts daily yield, news, and analysis**—Know what's moving the market and why.
- **Futures settlements**—Secure the most cost-effective transportation to the refinery at the right time.

Add **Oilgram Price Report** to your business toolbox and you'll also receive—at NO ADDITIONAL COST—**OPR Extra**, a daily electronic service that gives you most of the contents of **Oilgram Price Report**, in the same format you'll find in the newsletter that has provided the industry benchmark for more than 80 years. With **OPR Extra** you'll receive

- The entire day's US West Coast product price assessments;
- Daily spot ethanol assessments for the US East Coast, West Coast, and Midwest;
- Contract cargo prices and posted Atlantic and Gulf Coast residual prices;
- Market commentary, news, and analysis;
- Weekly API statistics;
- Lubes and asphalt price assessments; and
- NYMEX and IPE futures settlements

That's not all. When you order **Oilgram Price Report**, you will also receive Platts **US Futures Update**, a valuable summary of the past week in the US futures market as well as a look ahead.

*For Information*

Contact Us
Request For Trial
See a Sample
Buy Now

*Related Products*

Platts Global Alert
Crude Oil Marketwire
North American Crude Wire
Bunkerwire
Platts Oilgram News
Platts Refiner
European Marketscan