No. 02-465C
(Judge Hewitt)

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

LA GLORIA OIL AND GAS COMPANY,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

# DEFENDANT'S RESPONSE TO PLAINTIFF'S RCFC 56(F) MOTION

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

STEVEN J. GILLINGHAM
Assistant Director
Commercial Litigation Branch
Civil Division
Attn: Classification Unit
1100 L Street, N.W., 8th Floor
Department of Justice
Washington, D.C. 20530
Tele: (202) 616-2311
Fax: (202) 353-7988

Attorneys for Defendant

OF COUNSEL:

DONALD S. TRACY
Trial Attorney
Defense Supply Center Richmond
Richmond, VA 23297

HOWARD M. KAUFER
Assistant Counsel
Office of Counsel
Defense Energy Support Center
Ft. Belvoir, VA

May 26, 2006

## TABLE OF CONTENTS

**PAGE(S)**

DEFENDANT'S RESPONSE TO PLAINTIFFS' RCFC 56(f) MOTION ....................1

STATEMENT OF THE ISSUE ....................1

OVERVIEW OF PROCEEDINGS ....................2

SUMMARY OF THE ARGUMENT ....................6

ARGUMENT ....................8

I. Our Motion Pursuant To RCFC 12(b)(6) Should Proceed ....................8

II. Our Motion Pursuant To RCFC 12(b)(1) Should Proceed ....................10

III. Our Motion Pursuant To RCFC 56(b) Should Proceed ....................11

A. Introduction/Standard of Review ....................11

B. La Gloria's RCFC 56(f) Affidavit Fails That Rule's Standard For Relief ....................13

CONCLUSION ....................18

## TABLE OF AUTHORITIES

**CASES** **PAGE(S)**

Anderson v. Liberty Lobby, Inc.,
477 U.S. 242 (1986) ....................11, 13

Brubaker Amusement Co. v. United States,
304 F.3d 1349 (Fed. Cir. 2002) ....................12

Calcasieu v. United States, No. 02-1219C (Fed. Cl.) (Order of March 6, 2006) ....................8, 18

Celotex Corp. v. Catrett,
477 U.S. 317 (1986) ....................7, 11

Conley v. Gibson,
355 U.S. 41 (1957)........................................................................................................7, 8

DGS Contract Services, Inc. v. United States, 43 Fed. Cl. 227, 239 (1999)…………………….18

Gary-Williams v. United States, No. 03-2106 (Fed. Cl.) (order of April 20, 2006)……………. 18

Gould, Inc. v. United States,
935 F.2d 1271 (Fed. Cir. 1991)..............................................................................11, 12

Hermes v. United States,
58 Fed. Cl. 409 (2003) ..................................................................................................5, 7

Krim v. BancTexas Group, Inc.,
989 F.2d 1435 (5th Cir. 1993) .........................................................................................12

MAPCO Alaska Petroleum, Inc. v. United States,
27 Fed. Cl. 405 (1992) ............................................................................................ passim

Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 US 574, 587 (1986)……………. 12

Montana v. United States,
124 F.3d 1269 (Fed. Cir. 1999)........................................................................................11

Paalan v. United States,
57 Fed. Cl. 15 (2003) ................................................................................................14, 15

Rochman v. United States,
27 Fed. Cl. 162 (1992) ....................................................................................................11

Securities & Exchange Commission v. Spence & Green Chemical Co.,
612 F.2d 896 (5th Cir. 1980) ...........................................................................................12

Simmons Oil Corp. v. Tesoro Petroleum Corp.,
86 F.3d 1138 (Fed. Cir. 1996)...............................................................................2, 12, 14

Sweats Fashions, Inc. v. Pannill Knitting Co.,
833 F.2d 1560 (Fed. Cir. 1987)......................................................................................7, 11

Tesoro et al. v. United States,
405 F. 3d 1339 (Fed. Cir. 2005)................................................................................ passim

Thiesen Vending Co. v. United States, 58 Fed. Cl. 194 (2003)…………………………… 12, 13

Valero v. United States, No. 03-1916 (Fed. Cl.) (order of May 3, 2006)………………………. 18

Willmar Poultry Co. v. Morton-Norwich Products, Inc.,
520 F.2d 289 (8th Cir. 1975) ..........................................................................................12

**REGULATIONS**

FAR § 15.402(a) ......................................................................................................1, 3, 9

FAR § 15.802(b) ......................................................................................................1, 3, 9

**MISCELLANEOUS**

2A Jeremy C. Moore, Moore's Federal Practice, ¶ 12.07 [2.-5] (2d ed. 1992)............................12

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| LA GLORIA OIL AND GAS COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 02-465C<br>(Judge Hewitt) |

DEFENDANT'S RESPONSE TO PLAINTIFF'S RCFC 56(F) MOTION

The United States respectfully requests that the Court deny plaintiff's RCFC 56(f) motion to refuse defendant's motion for summary judgment or, in the alternative, for a continuance to permit discovery.

STATEMENT OF THE ISSUES

1. Whether La Gloria is entitled to discovery to pursue its claims that are subject to our motion to dismiss for failure to state a claim, pursuant to RCFC 12(b)(6), including its claims that:

a. the contracts at issue were illegal because their Economic Price Adjustment ("EPA") clauses were based upon "indexes rather than on Plaintiff's own established fuel prices," "were not market-based, were not designed or intended to used to set or adjust prices, and did not reflect at least the fair market value of military fuel" (Compl. ¶ 36-37);

b. the EPA clauses violated FAR 15.802(b) (currently codified at FAR § 15.402(a)) (Compl. ¶ 38);

c. the use of the PMM gives rise to alternative causes of action, including "Misrepresentation," "Breach of Contract," "Implied-In-Fact-Contract," "Failure of Consideration and Frustration of Purpose," and "Mistake" (Counts II-VI).

d. the contracts at issue constituted a constitutional taking (Count VII).

2. Whether La Gloria is entitled to discovery to pursue its claims at paragraph 40 and 41, that DESC's small-business set aside program is illegal, claims which are subject to our motion to dismiss for lack of jurisdiction, pursuant to RCFC 12(b)(1).

3. Whether, regarding our motion to dismiss pursuant to RCFC 56(b), La Gloria's declaration satisfies the requirements of RCFC 56(f), by stating with sufficient specificity *how* discovery will enable La Gloria to rebut our showing of the absence of a genuine issue of fact. See Simmons Oil Corp. v. Tesoro Petroleum Corp., 86 F.3d 1138, 1144 (Fed. Cir. 1996).

OVERVIEW OF PROCEEDINGS

La Gloria's complaint is an "everything but the kitchen sink" pleading designed to take advantage of MAPCO Alaska Petroleum, Inc. v. United States, 27 Fed. Cl. 405 (1992), which held that that DESC's jet-fuel contract price escalation Clause B19.33 was inconsistent with the Federal Acquisition Regulation. Subsequent to MAPCO, the FAR authority and DESC's parent issued regulations explicitly legalizing the clauses, which are in use to this day.[1] Nonetheless,

[1] None of the contracts at issue in the "jet-fuel litigation" were entered into after 1999, the date of the publication of the regulation expressly authorizing market-based clauses, in the Federal Register.

before the window closed, approximately 30 DESC fuel refiners, including La Gloria, filed suit hoping to cash in on this regulatory wrinkle.

This litigation is premised upon a single decision of this Court, MAPCO v. United States, a decision that, since the filing of the complaint in this case, has been abrogated. See Tesoro et al. v. United States, 405 F. 3d 1339 (Fed. Cir. 2005), *petition for reh'g. en banc denied*, No. 04-5064 (Fed. Cir. Aug. 22, 2005) ("Tesoro"). In Tesoro, the court explicitly rejected the contractors' contention, repeated here, that B19.33 was illegal because it was based upon "indexes rather than on Plaintiffs' own established fuel prices;" and because it used the Department of Energy's Petroleum Marketing Monthly ("PMM") as a price reference. As our moving brief explains, the standard Tesoro established for EPA clauses also effectively disposes of La Gloria's miscellaneous complaints concerning the legality of its contracts' EPA clauses, because it makes clear that the various tests La Gloria would have these clauses pass simply do not apply. In fact, the court held, in order to pass muster under FAR 16.203-1, EPA clauses need only be based upon "industry-based prices," which "may be established by reference to either a catalog or market sources independent of the manufacturer or vendor." Id. at 1347.

In response, La Gloria filed its Amended Complaint ("Compl.") designed to bolster the alternative counts with further factual allegations and an assertion that the contracting officer had the obligation to assure La Gloria was paid prices that were "fair and reasonable," pursuant to FAR 15.802(b) (currently codified at FAR § 15.402(a)) (see Compl. ¶ 38). La Gloria also stubbornly clung to allegations found in its original complaint that either were squarely rejected by Tesoro, or were disguised as "common law" allegations, such as mistake, misrepresentation, and breach. The former allegations variously assert that DESC improperly based its escalation

clause on a reference other than La Gloria's and should not have used the PMM in any case (Tesoro's explicit holding rejected that argument); or invoke requirements found nowhere in the law (asserting that EPA clauses must be "designed or intended" to set prices and "reflect at least the fair market value of military fuel"). As our motion explains, these allegations do not invoke a proper legal test for EPA clauses and, therefore, fail to state a claim upon which relief can be granted. In short, we have argued that, *as a matter of law* (regardless of whatever facts it may or may not find), La Gloria cannot prevail.

La Gloria's common-law allegations echo its "illegality" allegations, found in Count I. Although allegedly grounded in the parties' understandings and commitments, these allegations lack a factual basis -- one that might establish the essential unrequited promise or understanding that supposedly under girds these allegations. Their deficiency is unsurprising, because, as our motion explains, they are but thinly-disguised restatements of the Count I complaints, which, in turn depend upon MAPCO for their vitality. Accordingly, with regard to these allegations too, our motion argued that, *as a matter of law*, there simply was no relevant fact that La Gloria possessed or envisioned that could transform these counts into authentic common law claims.

La Gloria also argued in Count I that DESC's contracts were illegal because: (1) DESC's small business set-aside program violates the FAR's anti-auction provisions; (2) DESC's small business program improperly awarded "portions of the procurements set aside for small businesses together with those for large businesses"; and (3) DESC's small disadvantaged business program violates the equal protection component of the Fifth Amendment. Compl. ¶¶ 40-41. Our motion sought to dismiss these as well, *as a matter of law*. Regarding the first of these, we explained that the small-business program did not constitute an unlawful auction.

Regarding the second, we explained that DESC's program was lawful and that La Gloria's complaint concerning the order of award of contracts was a facial attack upon DESC's program, not a claim pursuant to a contract actually awarded to La Gloria and, therefore, not a matter within this Court's jurisdiction. Regarding the third allegation, we sought a dismissal pursuant to RCFC 12(b)(1), because this Court has no jurisdiction to address an equal protection claim.

Finally, La Gloria argued, in Count VII, that DESC's possession of the fuel purchased through the contracts at issue effected a taking. We moved to dismiss that count pursuant to RCFC 12(b)(6), because, *as a matter of law*, when Government action is subject to a contract, no Fifth Amendment takings may lie as a result of that action.

For an affirmative defense, acknowledging this Court's earlier decision concerning waiver, we moved to dismiss portions of the Second Amended Complaint not considered in that decision, pursuant to RCFC 56, explaining that, even if La Gloria's various allegations are not subject to dismissal for the reasons summarized above, we still would be entitled to summary judgment, because, years ago, La Gloria abandoned any rights the FAR, the Fifth Amendment, or small business regulations might have conferred upon it. La Gloria also forfeited any right it might have had to test those rights in litigation when it waited as many years as it had to file the necessary claims. In doing so, we relied upon this Court's decision in Hermes v. United States, 58 Fed. Cl. 409 (2003) ("Hermes II"). In that case, with no more discovery than has been had here, this Court found sufficient uncontroverted facts to determine that the jet-fuel contractor, on similar facts, had, indeed waived any claim it might have.

La Gloria responded with a motion purportedly filed pursuant to RCFC 56(f). Following a brief introduction, the document comprises two mirror-image documents: one, the motion; the

other, an affidavit from La Gloria's counsel. Beyond their brief introductions, both documents are divided into ten sections corresponding with purported discovery needs arising from: our proposed findings of fact; the introductory portions of the Second Amended Complaint; the individual counts of the Second Amended Complaint; and our affirmative defense of waiver.

Each of these sections consists, in its entirety, of two parts:

> (1) an assertion that La Gloria "requires discovery [of the following] in order to present by affidavit or other sworn testimony facts essential to its opposition." Pl. Mot. 6.[2]
>
> (2) a wholesale quotation of either defendant's proposed findings or allegations from the Second Amended Complaint. E.g., Pl. Mot. 8-23.

With regard to our defense of waiver, La Gloria's motion and affidavit are a bit more expansive, stating, in identical terms, that La Gloria "requires full discovery concerning negotiation, award and performance of the fuel contracts, and concerning DESC's prices and indexes in the fuel contracts." Pl. Mot. 23; Exh. A at 16.

## SUMMARY OF THE ARGUMENT

La Gloria is the claimant in this case. As such, it had the obligation to plead sufficient facts to invoke a cause of action, cognizable by this Court. It originally attempted to do so by pleading a MAPCO-style cause of action, supplemented by a series of *pro forma* alternative

[2] The declaration upon which the motion is based is less adorned, stating only that, with respect to defendant's proposed facts, "La Gloria requires discovery." Pl. Mot. Exh A at 1. With respect to La Gloria's complaint, the declaration admits "La Gloria requires discovery in order to establish the following allegations . . . ." E.g., id. at 10.

pleadings, invoking most imaginable contract causes of action. In Round 1 of this litigation, the parties avoided the alternative causes of action and focused on what certainly were the guts of the case, the MAPCO counts. When the court of appeals eviscerated that cause of action in Tesoro, La Gloria amended the complaint, in an effort to spare the claim, but made little substantive change. La Gloria then insisted that discovery was necessary. However, a complaint's viability is subject to examination when it is filed, not after years of discovery. And, as our motion demonstrates, the complaint, bloated as it is, has no legal vitality. Accordingly, the time to test it, dismiss it, or pare it, if necessary, is now.

Our obligation as a movant under Rules 12(b)(1) and (6) is simply to identify legal deficiencies in the pleadings, such that "no set of facts in support of his claim which would entitle [plaintiff] to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). Our obligation as a movant pursuant to Rule 56 is to "point[] out" that the record does not support the other party's case. Sweats Fashions, Inc. v. Pannill Knitting Co., 833 F.2d 1560, 1563 (Fed. Cir. 1987) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)).

Our Rule 12 motions, which affect the bulk of La Gloria's Amended Complaint, seek dismissal based upon La Gloria's failure either to properly invoke this Court's jurisdiction or to state a claim recognizable to the law. Under those circumstances, all the discovery in the world will not make La Gloria's claim viable. Our Rule 56 motion rests upon facts so basic and so free from doubt that no effort to avoid at least an initial test of the soundness of our argument can be justified under RCFC 1, this Court's "prime directive," which requires the "just, speedy, and inexpensive" resolution of all disputes. Indeed, it was this same set of facts that led the Court to conclude in Hermes II that claims such as these are barred.

Moreover, even to the extent that another fact or piece of evidence might be relevant to the resolution of this matter, La Gloria has so utterly ignored the requirements of RCFC 56(f) with its robotic "it-is-alleged-therefore-it-must-be-discovered" response, that it has forfeited both its right to discovery, as well as its opportunity to explain *why* such discovery is required.

For these reasons, similar motions have been denied in Calcasieu v. United States, No. 02-1219C (Fed. Cl.) (Order of March 6, 2006), and Gary-Williams v. United States, No. 03-2106 (Fed. Cl.) (order of April 20, 2006), and stayed pending consideration of our RCFC 12(b)(1) and 12(b)(6) arguments, in Valero v. United States, No. 03-1916 (Fed. Cl.) (order of May 3, 2006).

## ARGUMENT

I. Our Motion Pursuant To RCFC 12(b)(6) Should Proceed

We have moved to dismiss most counts of the Second Amended Complaint pursuant to RCFC 12(b)(6), which permits the dismissal of an allegation that fails to state a claim upon which relief may be granted. Dismissal upon this ground is appropriate whenever "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). RCFC 56(f) does not apply, at least directly, to Rule 12 motions, because these motions, if properly conceived, present pure questions of law.[3]

[3] We acknowledge that, if the Court were to consider documents outside the pleadings in disposing of any particular count, the matter would be converted to one pursuant to RCFC 56. See RCFC 12(b).

We have set forth our argument, citations to evidence, and rationale in full in our moving brief and see no point in repeating them here. Generally speaking, however, we aimed our Rule 12(b)6) motion at three categories of allegations: allegations of illegality found in Count I, the alternative or "common law" allegations found in Counts II-VI, and the takings allegation found in Count VII.

The Count I allegations fell into three subcategories:

- allegations that the contracts at issue were illegal because their Economic Price Adjustment ("EPA") clauses were based upon "indexes rather than on Plaintiffs' own established fuel prices" (Compl. ¶ 36);
- allegations that the contracts at issue were illegal because their EPA clauses "were not market-based, were not designed or intended to used to set or adjust prices, and did not reflect at least the fair market value of military fuel" (Compl. ¶ 37);
- the allegation that the EPA clauses violated FAR 15.802(b) (currently codified at FAR § 15.402(a)) (Compl. ¶ 38).

In our moving brief, we explained that the first of these allegations was squarely addressed by Tesoro, 405 F.3d at 1348. Thus, we can easily accept the allegation as true and prevail nonetheless. Our brief also explained that the "not designed or intended to be used to set or adjust prices" criterion was not one found in the law and is completely irrelevant to the fact that the parties agreed to use it to set *their* prices. This is a legal argument concerning the sufficiency of an allegation whose truth we accepted for the sake of our motion. The remaining argument also is purely legal in nature and concerns whether FAR 15.402(a) provides contractors with a cause of action.

The "common law" arguments, we explained, were the Count I legality arguments repackaged, i.e., based upon allegations that the escalators at issue were not designed or intended

to pay "fair market value," a term La Gloria has yet to define. Nonetheless, as we explained, each of these causes of action lacked a key ingredient – basically any hint of an arrangement other than the one clearly described in the contracts and, undisputedly, fully performed as written. La Gloria's suggestion that it *begin* the search for evidence of misrepresentation or mistake now is too little too late.

La Gloria's takings allegation also presents an entirely legal question. Accordingly, we do not deny that DESC has the fuel at issue. And, given its complaint, La Gloria is in no position to deny that the fuel was conveyed to the Government (rightly or wrongly) as a result of the contracts at issue. All that remains is the legal issue of whether a takings claim may lie when the property at issue was the subject of a contract. Accordingly, no discovery is warranted or necessary.

II. Our Motion Pursuant To RCFC 12(b)(1) Should Proceed

In Count I, La Gloria contends that DESC violated the Defense Federal Acquisition Regulation Supplement, part 219, by "improperly soliciting and awarding portions of the procurement set aside for small businesses together with those for large businesses." Compl. ¶ 40. La Gloria also alleges that DESC's "minority-owned business bidding preferences" violated the equal protection component of the Fifth Amendment. Compl. ¶ 41.

Concerning La Gloria's allegation that DESC violated the law by awarding large and small business contracts "together," we relied upon DESC's small business set aside clauses, the applicable FAR provision, and a GAO opinion demonstrating the legality of the DESC clauses. We also noted that La Gloria could show no harm from the operation of this program and that the complaint was, in effect, only a facial attack upon the program concerning which this Court

lacked jurisdiction. These are legal arguments, based upon established practices. La Gloria has responded with legal arguments and a conclusory affidavit of its counsel, which fail to explain why La Gloria requires discovery to resolve this issue. Accordingly, there is no need for further discovery concerning this issue.

La Gloria's assertion that it needs discovery to pursue its allegations regarding the DoD Small Disadvantaged Business preference program also is unsupported. Our argument is that this Court possesses no jurisdiction to entertain this claim, as a matter of law. La Gloria does not explain why it needs discovery to address this argument.

## III. Our Motion Pursuant To RCFC 56(b) Should Proceed

### A. Introduction/Standard of Review

As an alternative to our RCFC 12(b)(6) motion, we moved to dismiss most of the counts pursuant to RCFC 56(b). Summary judgment is warranted when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." RCFC 56(c); accord Montana v. United States, 124 F.3d 1269, 1273 (Fed. Cir. 1999). A factual issue is material if it could affect the outcome of the case *in light of the applicable law*. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) (emphasis added). A genuine dispute exists only if a reasonable trier of fact could find for the nonmoving party. Id. The movant need not "produce evidence" of the absence of factual disputes; it need only "point[] out" that the record does not support the other party's case. Sweats Fashions, Inc. v. Pannill Knitting Co., 833 F.2d 1560, 1563 (Fed. Cir. 1987) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)). In making this determination, the Court must accept the factual allegations set forth in the complaint as true and "indulge in all reasonable inferences in favor of the nonmovant." Gould,

Inc. v. United States, 935 F.2d 1271, 1274 (Fed. Cir. 1991). However, "legal conclusions, deductions, or opinions couched as factual allegations are not given a presumption of truthfulness." Rochman v. United States, 27 Fed. Cl. 162, 168 (1992)(quoting 2A Jeremy C. Moore, Moore's Federal Practice, ¶ 12.07 [2.-5] (2d ed. 1992)).

A litigant that requests discovery prior to responding to a motion for summary judgment must satisfy the requirements of RCFC 56(f). Specifically, it must demonstrate by affidavit that it "cannot for reasons stated present by affidavit facts essential to justify the party's opposition." RCFC 56(f). In doing so, the litigant "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 US 574, 587 (1986). Rather, it must "demonstrate specifically 'how postponement of a ruling on the motion will enable [plaintiff], by discovery or other means, to rebut the movant's showing of the absence of a genuine issue of fact.'" Simmons Oil Corp. v. Tesoro Petroleum Corp., 86 F.3d 1138, 1144 (Fed. Cir. 1996) (quoting Willmar Poultry Co. v. Morton-Norwich Products, Inc., 520 F.2d 289, 297 (8th Cir. 1975)); accord, e.g., Brubaker Amusement Co. v. United States, 304 F.3d 1349, 1361 (Fed. Cir. 2002). Thus, the party opposing summary judgment "'may not simply rely on vague assertions that additional discovery will produce needed, but unspecified, facts,'" Simmons Oil Corp. v. Tesoro Petroleum Corp., 86 F.3d at 1144 (quoting Securities & Exchange Commission v. Spence & Green Chemical Co., 612 F.2d 896, 901 (5th Cir. 1980)), and "is 'required to state with some precision the materials he hope[s] to obtain with further discovery, and exactly how he expect[s] those materials would help him in opposing summary judgment.'" Simmons Oil Corp., 86 F.3d at 1144 (quoting Krim v. BancTexas Group, Inc., 989 F.2d 1435, 1443 (5th Cir 1993)); accord Thiesen Vending Co. v.

United States, 58 Fed. Cl. 194 (2003) (litigant must specify the particular factual discovery being sought, explain how the results of the discovery are reasonably expected to engender a genuine issue of material fact, and provide an adequate factual predicate for the belief that there are discoverable facts sufficient to raise a genuine and material issue).

B. La Gloria's RCFC 56(f) Affidavit Fails That Rule's Standard For Relief

Here, as we have explained above, our motion challenges the materiality, not the truth, of the factual matters alleged in the Second Amended Complaint.[4] La Gloria's bland assertion that it needs discovery with respect to virtually every one of our proposed findings of fact, and virtually all of its own factual allegations, coupled with its assertion that it would not need discovery, were we to admit La Gloria's allegations such as those "concerning misrepresentation or mistake" (Pl. Mot. 7) underscore La Gloria's failure to grasp this distinction. We need not accept La Gloria's legal conclusions (such as "mistake"), nor need La Gloria accept ours. At this point, the only question is whether the allegations amount to anything, as a matter of law.

Even to the extent that other information might, in theory, exist and might relate to any aspect of our motion, La Gloria has forfeited both the right to undertake discovery to hunt for

[4] That is not to say we agree with every fact alleged. Our point is that only genuine disputes of material facts *that might affect the outcome of the suit* will preclude entry of summary judgment. See Anderson, 477 U.S. at 247-48 ("As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted . . . .").

that evidence and, at this point, the opportunity to explain why it needed any such evidence. As noted, La Gloria's 56(f) motion and affidavit simply fail to explain *why* La Gloria cannot obtain relevant evidence and how discovery will enable it to raise a genuine issue of material facts, in light of our *legal* arguments. As the court of appeals explained in Simmons, that is not enough, a movant is "required to state with some precision the materials he hope[s] to obtain with further discovery, and exactly how he expect[s] those materials would help him in opposing summary judgment." 86 F.3d at 1144. Accord Paalan v. United States, 57 Fed. Cl. 15 (2003) (discovery denied when plaintiff failed to submit "affidavit setting forth explicit reasons why discovery is needed to oppose defendant's motion for summary judgment . . . [and why] the 18 items he seeks to discover are relevant and necessary to the preparation of his opposition to defendant's motion for summary judgment").

Underpinning La Gloria's disregard for the requirements of RCFC 56(f) is the motion's implied assumption that the Government has the burden of proof, is sitting on that proof and, once La Gloria can examine it, this case may move forward. In fact, the opposite is true. Before it filed its complaint, if La Gloria were serious about pursuing true common law causes of action, it bore the obligation to determine whether there were mistakes, misunderstandings, or other unrequited promises or expectancies. Yet, now, we learn from La Gloria's motion that it needs access to "any number of former employees" to proceed – without any effort to demonstrate why it needs that access, what efforts it has made to obtain that access or what, if any information, it possesses to support its complaint. Pl. Mot. 4. Our motion is an assertion that La Gloria has no evidence or legal foundation for its case. If La Gloria now acknowledges as much, it is far too late for discovery.

Further diminishing La Gloria's 56(f)motion/declaration and underscoring La Gloria's true aim of simply keep this litigation alive is La Gloria's brazen insistence on discovery concerning matters obviously within its control or previously relied upon by it. See Paalan, 57 Fed. Cl. 15 (plaintiff not entitled to discovery, in part, because he was in possession of documents he sought to discover). For example, La Gloria asserts that it "requires discovery" to verify our Proposed Finding of Uncontroverted Fact ("PFF") 9 and 12, which state:

> 9. For its domestic bulk fuels contracts, DESC's EPA clauses listed prices for various refined products and regions, taken from available market price publications. See, e.g., Def. Exh. 3 (parts A and D). For example, part D of EPA clause B19.33 provided a unique "reference price" (sometimes called a "base reference price") for each refined petroleum product sought in the RFP. Id. DESC's principal EPA clause (B19.33) listed prices for various refined products and regions, taken from a commercially available market publication. An offeror would propose a "base price" for each product offered. That price was subject to adjustment, based upon changes in the reference price. Specifically, B.19.33 provided that "[t]he prices payable under this contract for listed items shall be the base [proposal] price for the listed item increased or decreased by the same number of cents, or fraction thereof, that the reference price increases or decreases per like unit of measure from the base reference price." Def. Exh. 9 at 5 (part D ¶(c)). The base price was primarily for evaluation purposes, and as the base line from which price adjustments were made. Because the base price would be adjusted during performance, it was not the price the contractor received for fuel. Walker Decl. ¶ 4.
>
> 12. A significant feature of the PMM is the three-month lag time DOE requires to obtain the sales data for any particular month. Thus, for example, sales data for January are published in April, and data for February are published in May. Walker Decl. ¶ 4. This was significant in DESC's administration of the PMM-based EPA clauses, because B19.33 provided for monthly adjustments. Def. Exh. 3. To accommodate DOE's three-month lag, DESC made monthly adjustments on an interim basis, and then reconciled them when PMM data for that month were published. Id.

Pl. Mot. 8.

These are simple statements concerning the existence and operation of the escalation clauses contained in the contracts at issue. DESC's use of those clauses is the very foundation of this case. Accordingly, their use is alleged in La Gloria's Amended Complaint. Compl. ¶ 11. So important is that fact to *La Gloria's* case, and so confident was La Gloria in the indisputability of that fact, that La Gloria proposed its *own* facts citing and quoting from the clauses, in support of its opposition to our motion for partial summary judgment. See Pl. PFF ¶¶ 3-4, 7.

Similarly, La Gloria has refused to admit any of our proposed findings 14-21, which describe 1986 and 1987 DESC papers, in La Gloria's possession, concerning escalation clauses, including the PMM. Pl. Mot. 9-10. The proposed findings simply recited the statements from those documents. They are not material to our motion. Our purpose for including them was to demonstrate that they also were not material to *La Gloria's* case, after its Amended Complaint had suggested they were. Indeed, we included the documents only to counterbalance the Second Amended Complaint's peek-a-boo references to a DESC PMM study, which, the complaint suggests, demonstrate that DESC was aware that there was something corrupt in its use of the PMM. Compl. ¶¶ 17-20. We included the actual documents in our appendix and summarized them at length to demonstrate that, in addition to there being no materiality to this innuendo, there also was no factual basis for the innuendo. Nonetheless, the essence of the PFFs are quotes from the documents, which La Gloria has. La Gloria's motion fails to explain whether its case depends upon a different DESC study or why it cannot admit to the *contents* of these.

In any event, our motion does not depend upon the existence of these documents. It is La Gloria that insists that DESC's change from the PMM makes its case. If that is so, the Court now has the documents, and can decide the question. But, for La Gloria to insist that these documents support La Gloria's claim, and then, when we include them with our motion, to insist it cannot admit even the document's contents, is a special kind of hubris. More importantly, it is an admission that La Gloria has no case.[5]

Concerning our affirmative defenses of waiver and estoppel, they need be reached only if our other defenses do not succeed. Indeed, the Federal Circuit in Tesoro did not reach that issue, having credited our direct defense to the contractor's illegality count. Nonetheless, we already have succeeded once on this argument in this Court (and also have failed), with no more discovery than has been had here. Accordingly, we see no reason why further discovery is necessary in this case. Incredibly, La Gloria asserts, without explanation, that it cannot admit even our allegation that La Gloria did not complain about the monthly price adjustments to its contracts. Pl. Mot. 12 ¶ T. If this were as important a matter as La Gloria now asserts, one

---

[5] The same can be said of La Gloria's refusal to admit PFF 12, which concerns the three-month lag time involved in the use of the earlier PMM clauses. La Gloria is well aware of that fact, because the lag was the basis for the interim price adjustments specified in one of the contracts at issue and described by Tesoro's consultants. Pl. App. 621 ¶ 43. Tesoro also is well aware of the existence of the clauses described in our PFF 26-27, which are the basis for La Gloria's complaint at paragraphs 40-41. Our motion (as well as La Gloria's complaint) is based only upon existence of these clauses and their terms.

would expect that La Gloria would have been complaining all along, and that it would have begun a claim file to document those complaints. The fact that La Gloria cannot even contradict this basic allegation underscores how little this lawsuit has to do with any actual harm suffered by La Gloria; and how truly aimless this litigation is.

Concerning La Gloria's allegation that DESC used prohibited auction techniques, whereby DESC awarded contracts to bidders that agreed to match other bidders' prices (Compl. ¶ 39), we have explained that, as a matter of law, DESC did not conduct a prohibited auction, because the set-aside procedure did not involve the "direct bidding of price between two competing offerors" that is prohibited by the OFPPA. See DGS Contract Services, Inc. v. United States, 43 Fed. Cl. 227, 239 (1999). La Gloria's response also involves an argument of law, and provides no explanation concerning why discovery is necessary. Moreover, La Gloria does not set forth a single fact, by affidavit or otherwise, explaining how any such violation affected its contracts. Accordingly, we see no need for further discovery on that point.

For these reasons, similar motions have been denied in Calcasieu v. United States, No. 02-1219C (Fed. Cl.) (Order of March 6, 2006), and Gary-Williams v. United States, No. 03-2106 (Fed. Cl.) (order of April 20, 2006), and stayed pending consideration of our RCFC 12(b)(1) and 12(b)(6) arguments, in Valero v. United States, No. 03-1916 (Fed. Cl.) (order of May 3, 2006).

## CONCLUSION

For these reasons, defendant respectfully requests that the Court deny La Gloria's RCFC 56(f) motion.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

s/ David M. Cohen
DAVID M. COHEN
Director

s/ Steven J. Gillingham
STEVEN J. GILLINGHAM
Assistant Director
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
1100 L Street, N.W., 8th Floor
Washington, D.C. 20530
Tele: (202) 616-2311
Fax: (202) 353-7988

Attorneys for Defendant

OF COUNSEL:

HOWARD M. KAUFER
Assistant Counsel
Office of Counsel
Defense Energy Support Center
Ft. Belvoir, VA

DONALD S. TRACY
Trial Attorney
Defense Supply Center
Richmond, VA

May 26, 2006

CERTIFICATE OF FILING

I hereby certify that on May 26, 2006, a copy of the foregoing document was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/Steven J. Gillingham