# United States Court of Appeals for the Federal Circuit

2007-5004

CONOCOPHILLIPS, CONOCO, INC.,
and PHILLIPS PETROLEUM COMPANY,

Plaintiffs-Appellants,

v.

UNITED STATES,

Defendant-Appellee.

---

2007-5010

LA GLORIA OIL AND GAS COMPANY,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee.

J. Keith Burt, Mayer, Brown, LLP, of Washington, DC, argued for plaintiffs-appellants in both 2007-5004 and 2007-5010. With him on the brief were Cameron S. Hamrick, and Michael E. Lackey, and Adrian L. Steel, Jr.

Steven J. Gillingham, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for defendant-appellee in both 2007-5004 and 2007-5010. With him on the brief were Peter D. Keisler, Assistant Attorney General, and Jeanne E. Davidson, Director. Of counsel on the brief were Howard M. Kaufer, Assistant Counsel, Office of Counsel, Defense Energy Support Center, of Fort Belvoir, Virginia, and Donald S. Tracy, Trial Attorney, Defense Supply Center Richmond, of Richmond, Virginia.

Appealed from: United States Court of Federal Claims

Senior Judge John P. Wiese
Judge Emily C. Hewitt

# United States Court of Appeals for the Federal Circuit

2007-5004

CONOCOPHILLIPS, CONOCO, INC.,
and PHILLIPS PETROLEUM COMPANY,

Plaintiffs-Appellants,

v.

UNITED STATES,

Defendant-Appellee.

---

2007-5010

LA GLORIA OIL AND GAS COMPANY,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee.

DECIDED: September 21, 2007

Before BRYSON, LINN, and PROST, Circuit Judges.

BRYSON, Circuit Judge.

These are consolidated appeals from judgments of the United States Court of Federal Claims dismissing the plaintiffs-appellants' claims against the United States. The plaintiffs in the first case are ConocoPhillips, Conoco, Inc., and Phillips Petroleum Company (collectively, "ConocoPhillips"). The plaintiff in the second case is La Gloria Oil and Gas Company. The appeals focus on the application of the economic price adjustment clause in the plaintiffs' contracts to supply fuel to the government for military uses (mostly several kinds of military jet fuel). Because the plaintiffs have not shown that the economic price adjustment clause was unlawful, that there was a material mistake in the formation of the contracts, or that there was a breach of contract, we affirm the trial court's dismissal of those claims in both appeals. However, we reverse the trial court's jurisdictional dismissal of La Gloria's claims that the government's small business and minority set-aside programs unlawfully reduced the prices of La Gloria's contracts, and we remand those claims for further proceedings.

I

The plaintiffs entered into multiple contracts with the Defense Energy Support Center, a purchasing agent for the Department of Defense, to supply fuel. Each of the contracts at issue in these appeals contained an economic price adjustment clause that caused the contract price to be adjusted each month based on a publication known as the Petroleum Marketing Monthly ("PMM"). The PMM is a report by the Department of Energy that calculates the weighted average price of particular groups of related fuels within five geographic regions. That computation is based on monthly sales data that all refiners are required to submit to the government. After all the contracts at issue had been fully performed, the plaintiffs brought suit in the Court of Federal Claims

seeking reformation of the contracts' economic adjustment clauses so as to increase the amount due to them under the contracts.

The plaintiffs offered several theories to justify reformation. Their principal contention was that the PMM failed to serve as an accurate measure of changes in the market price for the fuels sold pursuant to the contracts. For that reason, they argued, the use of the PMM in the price adjustment clause violated governing regulations, was the result of a mutual or unilateral mistake, and resulted in a breach of the government's obligation to pay a fair market price for the fuel. The plaintiffs also argued that reformation of the contracts was necessary to compensate them for the effects of alleged constitutional and regulatory violations related to the government's small business set-aside and minority preference programs. The trial court rejected all the plaintiffs' claims, and the plaintiffs now appeal.

II

A

The plaintiffs first contend that the contracts' use of the PMM as the basis for price adjustments is contrary to the applicable provision of the Federal Acquisition Regulation ("FAR") because the PMM was "not market-based, [was] not designed or intended to be used to set or adjust prices, and did not reflect at least the fair market value of military fuel." The pertinent FAR provision, 48 C.F.R. § 16.203-1(a) (1994 ed.), allowed the price of goods in certain contracts to be adjusted "based on increases or decreases from an agreed-upon level in published or otherwise established prices of specific items or the contract end items." The FAR defined established market prices as "current prices that (i) are established in the course of ordinary and usual trade

between buyers and sellers free to bargain and (ii) can be substantiated by data from sources independent of the manufacturer or vendor." 48 C.F.R. § 15.804-3(c)(2) (1994 ed.).

In Tesoro Hawaii Corp. v. United States, 405 F.3d 1339, 1347 (Fed. Cir. 2005), which dealt with the same price adjustment clause that is at issue in these cases, we held that the FAR permitted price adjustment clauses to be based on prices that were "established by reference to either a catalog or market sources independent of the manufacturer or vendor." The appellant argued that the PMM could not be used as the basis for a price adjustment because it did not reflect either the contractor's price or a "catalog" price, i.e., any other vendor's current price. Id. at 1348. We rejected that argument, stating that "DESC's use of a market-based EPA clause tied to the PMM was authorized under the FAR." Id.

The government points to that statement in Tesoro and argues that it disposes of all of the plaintiffs' legal challenges to the use of the PMM in these cases. We do not interpret Tesoro so broadly, however. While we upheld the use of the PMM against each of the challenges raised by the plaintiffs in Tesoro, the plaintiffs in the instant cases have raised an additional and somewhat different argument that requires separate treatment. In these appeals, the plaintiffs contend not only that the PMM did not represent the contractor's price or any vendor's established price, but also that the PMM was not designed to provide, and did not in fact provide, an accurate measure of the actual and fair market price of the fuels that were the subjects of the contracts. For that reason, they contend that the PMM violated the regulatory requirement that price

adjustments be based on "published or otherwise established prices." 48 C.F.R. § 16-203-1(a) (1994 ed.).

The trial court in Conoco rejected the plaintiffs' argument on the ground that the regulatory requirement that price adjustments be "based on increases or decreases from an agreed-upon level in . . . established prices of specific items," 48 C.F.R. § 16.203-1(a) (1994 ed.), is satisfied "if the adjustments are based on 'market sources independent of the manufacturer or vendor,'" ConocoPhillips v. United States, No. 02-1367C, slip op. at 8 (Fed. Cl. Sept. 12, 2006) (citing Tesoro, 405 F.3d at 1347). The court concluded that the PMM, as a market publication that compiles the monthly average sales figures reported by refiners, qualified as such a source and therefore satisfied the requirements of the FAR provision at issue.

We agree with the trial court that the PMM is a market-based compilation of sales figures that constitutes a sufficiently accurate measure of "established prices" to qualify as a permissible mechanism for price adjustment under FAR § 16.203-1(a). It is undisputed that the PMM values reflect the industry's actual sales data for a particular month and that the PMM calculates the market price for various fuel groups in different regions by computing an average of the price of each fuel group in each region. The price is thus established by reference to actual sales, independent of the contract manufacturer or vendor. It is also established "in the course of ordinary and usual trade between buyer and seller free to bargain," in that it is derived from actual sales of the fuel. Whether the PMM was designed or intended to be used to adjust prices is immaterial, as the regulations do not impose any such requirement.

The PMM's use of an amalgamation of related products does not render the PMM ineligible to serve as the basis for a price adjustment clause under the regulations. The language of FAR § 16.203-1(a), which allowed the contract price to be adjusted based on increases or decreases "in published or otherwise established prices" for particular items, gave the contracting parties substantial freedom to use "market-based references to identify 'established prices.'" Tesoro, 405 F.3d at 1347. Under that standard, it was permissible to use a published weighted average of multiple reference items if the reference items are sufficiently similar to the contract items that it was reasonable, at the time the parties entered into the contract, to expect the index to approximate the change in the market price of the contract item. The regulations did not require the use of particular vendors' prices, and they also did not require the use of any particular measure of the market. In such a setting, it is not surprising that the regulations gave the parties some flexibility in choosing how market-based price adjustments would be calculated. Absent some degree of flexibility, contractual agreements would constantly be subject to second-guessing through litigation over whether the method chosen in advance for price adjustment turned out after the fact to correlate sufficiently closely to what each party regards as the correct measure of market price.

Relying on their experts' reports, the plaintiffs complain that the PMM suffers from an "index number problem." According to those reports, the "index number problem" is a result of the fact that the PMM "represents a [weighted average by volume] of multiple different products sold across many locations." As a result, the price reported by the PMM can vary even if the only market change is in the sales

volume of a particular fuel for a particular location. But that objection to using the PMM assumes that the sales included in the PMM reference group involve products and geographical regions unrelated to the products to which the price adjustment clause is directed. The fact that using a weighted average might result in the average price of a particular group of related fuels being affected by a change in the relative volumes of the individual products sold does not make the PMM per se unsuitable as a market measure. If the items are sufficiently closely related, it is reasonable to regard them as effectively constituting a single market. Thus, for example, the record reflects that JP-5 and JP-8, two of the jet fuels that were subjects of the plaintiffs' contracts, are similar to one another and to a commercial kerosene-based jet fuel known as Jet A. In their briefs, the plaintiffs do not argue that those products are sufficiently different that it was improper to aggregate sales of those products for purposes of determining price. Nor do they argue that the geographic areas used in the economic price adjustment clauses fail to correlate reasonably with the actual markets for the contract items.

The plaintiffs next argue that the FAR required the government to pay at least a fair market price for fuel and that the PMM does not satisfy that requirement. In support of that contention, they assert that the monthly changes in price reflected by the PMM do not bear a sufficiently close relation to changes in other market indices. By defining the market price by reference to other market measures, however, the plaintiffs are simply arguing that the parties should have used a different market-based measure to adjust prices and to define the relevant product group. The regulatory language is not so restrictive. If the plaintiffs had felt that a different method of adjusting market prices would be more appropriate and if the issue was sufficiently important to them, they

could have objected to the use of the PMM; if the government had insisted on using the PMM, they could have declined to enter into the contracts.

The regulations required only that the price adjustment clause be based on a market-based index. They did not specify a particular means of measuring market value, nor did they contemplate that one party or the other could contest the price dictated by the agreed-upon price adjustment clause after the fact by contending that the price adjustments made pursuant to the contract did not have the effect of generating a fair market price for the goods. In particular, nothing in the regulations contemplated that when the parties agreed upon a particular price adjustment mechanism, in an effort to ensure that the contract price would approximate a fair market price, a dissatisfied party could sue for reformation if the agreed-upon adjustment mechanism in operation either undershot or overshot what that party regarded as the fair market price for the contract goods. Finally, to assert, as the appellants do, that the contractor was guaranteed "at least" the fair market value is to say that while the government could not benefit from any difference between the measurement agreed upon and the "fair market value," the contractor could. The FAR did not bind the government to such a one-sided arrangement.[1]

---

[1] In footnotes, the plaintiffs take issue with the trial court's decision that the FAR § 15.802 (1994 ed.) did not provide contractors with a cause of action based on the requirement that the government "[p]urchase supplies and services from responsible sources at fair and reasonable prices." On this point, however, the plaintiffs do not make a substantive argument, preferring to rely solely on a statement of disagreement and a citation to Freightliner Corp. v. Caldera, 224 F.3d 1361, 1365 (Fed. Cir. 2000). That case does not address section 15.802 but simply states that "each regulation must be analyzed independently to determine whether it confers a cause of action upon the private contractor." The plaintiffs offer no argument as to why section

B

The plaintiffs next argue that the contracts should be reformed based on a theory of mutual or unilateral mistake. The plaintiffs assert that when they entered into the contracts they believed that the PMM accurately reflected market prices, and they did not appreciate the way in which the price changes reported by the PMM could differ from price changes reported by other sources of market information. The contracts, however, are very clear about the price that will be paid to the contractor and how that price will be adjusted. The contracts state that the reference for price adjustment "is the average or weighted average sales price of the specified products in the specified [geographic region]." They then specify the group of fuels and the region to be used when calculating the monthly reference price. The contracts also specifically name the PMM as the source of the reference price. Given that recitation, it cannot be said that either party could have been mistaken as to the method to be used when calculating the PMM. To the extent the plaintiffs thought that the PMM tracked other market publications more closely than it did, or that the PMM was not subject to the "index number problem," which is a necessary result of the articulated method of calculating market prices, it was incumbent upon the plaintiffs to investigate those issues before entering into the contract. See Restatement (Second) of Contracts § 154(b) (a party bears the risk of a mistake when the party is aware, at the time the contract is made,

---

15.802 provided a cause of action under which the contracts can be reformed, and we regard that argument as insufficiently developed to warrant addressing. See SmithKline Beecham Corp. v. Apotex Corp., 439 F.3d 1312, 1320 (Fed. Cir. 2006) (mere statements of disagreement are not developed arguments and issues to which those statements apply are therefore waived).

that the party has only limited knowledge with respect to the facts to which the mistake relates but treats that limited knowledge as sufficient).

The plaintiffs argue that our decision in Beta Systems, Inc. v. United States, 838 F.2d 1179 (Fed. Cir. 1988), required the trial court to conclude that there was a mutual mistake in the contracts. In Beta Systems we were confronted with an allegation that there was a mutual mistake in the selection of a particular cost index for use in an economic price adjustment clause. That index did not adequately account for the price of an aluminum alloy, the major construction material for the contract product. We concluded that, if the clause at issue violated a particular regulation, there was a mutual mistake justifying reformation because (1) the government did not contest that the plaintiff "did not intend to use an index that would effectively eliminate its principal construction material" from the index, and (2) there was "a legal presumption that the government did not intend to use an index that would violate the law." 838 F.2d at 1186. That is not the situation in this case. As we concluded above, use of the PMM was not unlawful, and therefore there is no legal presumption that the government was mistaken in agreeing to use the PMM. Nor do the plaintiffs point to any other reason to believe that the government was mistaken about the characteristics of the PMM. Accordingly, Beta Systems does not support the plaintiffs' position on this issue.

C

The plaintiffs argue that even if there was no mistake in formation, the government breached the contracts by failing to pay market price for the purchased fuel. That argument fails, however, because the description of the process of calculating price adjustments, which was set forth in detail in the contracts, makes plain

that the PMM was the measure of market prices to be used when adjusting the fuel price. The contracts did not contain any representation that the plaintiffs would be ensured a price for fuel that was calculated by some method different from the method set forth in the economic price adjustment clauses. Again, if the plaintiffs had wanted the contract price to be adjusted based on a different measure of market price, they should not have agreed to use the PMM. Because the government complied with the terms of the price adjustment clause, it is not liable for breach of contract.

III

The plaintiffs argued below that they were entitled to reformation based on alleged illegalities in the bidding process. Their claims related to the implementation of two procurement policies followed by the government. The first policy gives a 10 percent price preference to minorities who bid on the contract. The second sets aside a portion of the contracts for small businesses that are able to match the lowest price submitted by the larger companies; if the small businesses are unable to match that bid, the contracts are awarded to the company that submitted the lowest bid. The plaintiffs allege that the minority preference policy violates the equal protection component of Fifth Amendment's Due Process Clause, and that the small business policy contravenes 41 U.S.C. § 423(a)(1) and FAR § 15.610(d) (1994 ed.), both of which prohibit disclosure of other bidders' bids. Before the trial court, the plaintiffs asserted that they were forced to submit bids that were lower than they otherwise would have been in order to ensure that they would not lose the contracts to minority and small business bidders. As a remedy, they contend that they should be entitled to the

higher contract price that they claim they would have obtained in the absence of those two policies.

The trial court decided those issues differently for ConocoPhillips and La Gloria. The court found that ConocoPhillips had waived its small business and minority preference claims, holding that the proper time to address the alleged illegality of those programs was prior to the award of the contract. The court ruled that ConocoPhillips could not "on the one hand remain silent in the face of what they now contend was a facially invalid solicitation and admittedly reduce their [bids] to remain competitive . . . and then, on the other hand, seek many years after the fact to challenge the prices they themselves had set." In addition, the court held that ConocoPhillips's challenges to the small business set-aside program failed on the merits.

The trial court also dismissed La Gloria's minority preference and small business set-aside claims. According to the trial court, those claims were directed to errors in the bidding process. Because La Gloria was not a disappointed bidder, the court found that those claims did not fall within its bid protest jurisdiction. The court also found that those claims did not fall within its jurisdiction under the Tucker Act or the Contract Disputes Act because the claims were not founded on the contract. Accordingly, the court dismissed La Gloria's minority preference and small business set-aside claims for want of jurisdiction.

A

In this court, ConocoPhillips refers to the trial court's waiver ruling with respect to the minority preference claim only in a single conclusory statement in a footnote in its

opening brief.[2] Its entire argument on that issue consists of the following statement: "[T]he law and the record do not support such a holding [of waiver] with respect to ConocoPhillips' . . . illegal minority price preference claims." That summary statement, made in passing only in a footnote, is not sufficient under our precedents to preserve an argument for review. See SmithKline Beecham Corp. v. Apotex Corp., 439 F.3d 1312, 1320 (Fed. Cir. 2006); Cross Med. Prods., Inc., 424 F.3d 1293, 1320-21 n.3 (Fed. Cir. 2005); Fuji Photo Film Co. v. Jazz Photo Corp., 394 F.3d 1368, 1375 n.4 (Fed. Cir. 2005); Graphic Controls Corp. v. Utah Med. Prods., 149 F.3d 1382, 1385 (Fed. Cir. 1998); 20A James W. Moore et al., Moore's Federal Practice § 328.20[9] (3d ed. 2007) ("an argument or claim mentioned only in passing or only in a footnote is not adequately raised or preserved for appellate review"). Accordingly, we do not address ConocoPhillips's challenge to the government's minority preference policy.

B

In its brief, La Gloria argues that its claims regarding the minority preference and small business set-aside policies are based on the price clause of the contract or at least relate to the contract, as is required by the Contract Disputes Act. La Gloria is correct. In LaBarge Products, Inc. v. West, 46 F.3d 1547 (Fed. Cir. 1995), the winning contractor's bid was disclosed during the bidding process, resulting in a lower contract price. After being awarded the contract, the plaintiff brought suit, arguing that the price was improperly lowered as a result of the bid disclosure. Evaluating that claim under the Contract Disputes Act, we held that because the allegedly illegal act "arguably could

---

[2] Conoco does not challenge the disposition of its small business set-aside program claim.

have affected the price of the [contract], there can be no doubt that a claim based upon these actions 'relates to' that contract. The causal connection establishes the requisite relationship." Id. at 1553. That was so even though the allegations made were "the kind of allegations that are ordinarily made in pre-award bid protests, not after award of a contract." Id.

The question at issue in LaBarge is identical in all material respects to La Gloria's small business set-aside claim. Nor does there appear to be any material difference between the allegations in LaBarge that the government engaged in regulatory violations that caused the contract price to be reduced, and LaGloria's allegations that the government's minority preference policy violated the contractor's constitutional rights in a way that affected the price term of the contract. Both allegations are sufficiently related to the contract to bring the claims within the Contract Disputes Act and the jurisdiction of the Court of Federal Claims. We therefore reverse the judgment of the trial court in the LaGloria case and remand for further proceedings with regard to LaGloria's claims relating to the minority preference and small business set-aside policies.

No. 2007-5004, AFFIRMED.

No. 2007-5010, AFFIRMED IN PART, REVERSED IN PART, and REMANDED.

CERTIFIED COPY
I HEREBY CERTIFY THIS DOCUMENT IS A TRUE AND CORRECT COPY OF THE ORIGINAL ON FILE.
UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT
By: Casey Turner Date: 11/20/07